**Jerry Wayne TRUSSELL, Petitioner-Appellant,**

v.

**W.J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.**

No. 81–1381.

United States Court of Appeals, Fifth Circuit.

March 4, 1983.

As Amended on Denial of Rehearing May 9, 1983.

Scott J. Atlas, court appointed, Tracy K. Christopher, court appointed, Houston, Tex., for petitioner-appellant.

Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN and JOHNSON, Circuit Judges, and PARKER *, District Judge.

JOHN V. PARKER, District Judge:

Petitioner, a state prison inmate, invokes the jurisdiction of the federal courts under 28 U.S.C. § 2254 for review of his trial and

---

* John V. Parker, Chief Judge, Middle District of Louisiana, sitting by designation.

conviction by the state of Texas of the crime of aggravated robbery. The district court denied petitioner's application for writ of habeas corpus.

Although petitioner attacks his conviction from several different directions, his basic complaint regarding his trial is that a police "offense report" relating to a pretrial line-up was not admitted into evidence.

Careful review of the record reveals that there is no merit to any of petitioner's contentions and we affirm denial of the writ.

Trussell was convicted of being one of four men who committed the armed robbery of several employees of the American Bank of Commerce in Wolfforth, Texas, on August 31, 1976. The robbers wore ski masks and none of the bank employees could identify any of them, although several testified that petitioner had the same physical characteristics as one of the robbers. The bank employees also positively identified a white 1976 Ford LTD automobile which the robbers used as their getaway vehicle.

A few minutes after the robbery, four men arrived at the Frenship Co-op Gin, located approximately five miles from the bank, in the white Ford LTD automobile. A maroon Pontiac Grand Prix automobile and a pick-up truck with a white top were parked in the lot at the gin. The four men got out of the white Ford; two got into the pick-up truck and drove off and two got into the Pontiac and drove off.

Mr. T.B. Brown and Mr. Elmer Jorgensen, employees of the gin, observed the four men arrive and depart. At the trial Brown specifically identified petitioner, Trussell, as being the person who got into the pick-up truck and drove it away. He estimated that he was about thirty feet from the pick-up truck, while his companion, Mr. Jorgensen, could identify none of the four men and he estimated that the distance was about three hundred feet.

Mr. Brown told the police what he had seen and he noted that the pick-up truck had the identifying words "Smith Ford, Slayton, Texas" imprinted on the rear bumper. Mr. Brown could neither read nor spell and he testified that Jorgenson had told him about the lettering "Smith Ford" on the truck. At trial, Jorgensen denied that he said that; it is established however that the truck did, in fact, have those words on the rear bumper.

Included in the funds which the robbers took from the bank was certain "bait money," bills which could later be identified. Although some of his co-defendants had "bait money" in their possession at the time of their arrest, none was found on petitioner at the time of his arrest. The authorities identified Trussell's fingerprint on a pistol which was discovered in the maroon Pontiac. This pistol was identified as being similar to one of the pistols used at the robbery. Trussell's wife testified that on the night before the robbery, Joe Carol Jackson, a co-defendant, came to the Trussell home and discussed the possible sale of the weapon to Trussell who handled it at that time.

Since all of the evidence linking Trussell to the robbery was circumstantial, the testimony of Brown positively identifying him as the man who drove up in the white Ford LTD and who got out of that vehicle and drove away in the white pick-up truck, was crucial to the state's case. The police report in question was prepared by Deputy J.B. Douglas relating to the results of a line-up held on the same date as the robbery, August 31, 1976. Both Brown and Jorgensen participated in the line-up and the report contained, inter alia, the following statement:

Mr. T.B. Brown . . . and Elmer Jorgensen . . . came to the Sheriff's Dept. and viewed the above line-up but could not identify any of the above as the persons that left the white LTD Ford at the Frenship Gin.

The existence and content of the report was disclosed to the defense before the trial, in response to a *Brady* type motion. The defense was also informed that Deputy Douglas, the author of the report, had testified at the trial of a co-defendant that the report contained a typographical error and

was not correct with respect to Brown's inability to identify Trussell.

After the state rested its case, petitioner called the deputy sheriff who was custodian of the records and attempted to qualify the offense report as a business record under Article 3737e, Texas Revised Civil Statutes Annotated (Vernon).

The trial court sustained the state's objection and the report was not admitted in evidence. On appeal, the Texas Court of Criminal Appeals held that the report was indeed a business record under Texas law but that it was nevertheless not admissible. The appellate court held that if offered as original exculpatory evidence, the report was "hearsay within hearsay," reasoning that the report represented an out of court statement by Douglas reciting an out of court statement by Brown (that Brown could not identify anyone). The appellate court also held that if offered to impeach Brown's rebuttal testimony (that he had in fact identified Trussell at the line-up), then the report was not admissible because counsel failed to cross examine Brown concerning the time, place and circumstance of the prior inconsistent statement, as required by Texas procedure. Defendant's conviction was affirmed.

Subsequently, petitioner exhausted his state court remedies relative to the claimed constitutional deprivation now raised on appeal; he then instituted this proceeding in federal district court which, as noted above, denied the application.

Petitioner argues that exclusion of the offense report from the jury was so fundamentally unfair as to violate his Fifth Amendment right to due process of law and his Sixth Amendment right to compulsory process. He further alleges that the trial court restricted his cross examination of "the sole eyewitness" (Brown) regarding his failure to identify petitioner at the pretrial line-up and that the prosecutor mislead him about the availability at trial of Deputy Douglas, "deliberately failed to disclose" the line-up report to the jury, allowed Brown to testify falsely that he had identified Trussell at the pretrial line-up and

failed to correct that false testimony. Finally, petitioner argues that had the offense report been received in evidence, no rational juror could have found him guilty beyond a reasonable doubt and thus there was insufficient evidence to support his conviction under the standard of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

A federal court may entertain an application for a writ of habeas corpus from a person in state custody, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Federal review of state convictions is confined to the very narrow standard of due process. The Constitution does not guarantee every state defendant an error-free trial and before a federal court may overturn a state conviction, it must first find an error that amounts to a, "failure to observe that fundamental fairness essential to the very concept of justice." *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166, 180 (1941); *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431, 436 (1974). We may not consider the correctness of the evidentiary rulings of the Texas courts; our authority is limited to a determination of "whether there has been a constitutional infraction of [petitioner's] due process rights which would render the trial as a whole 'fundamentally unfair'." *Nelson v. Estelle,* 642 F.2d 903 (5th Cir. 1981). *Lane v. Jones,* 626 F.2d 1296 (5th Cir.1980), cert. den. 450 U.S. 928, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981).

I.

In his brief, filed by new counsel who did not represent petitioner at the trial, plaintiff asserts that the prosecution included the name of Deputy Douglas, the author of the report, on its witness list and noted an "s" by his name indicating to the defense that he had been subpoenaed and would be present at the trial. It turned out that Deputy Douglas was in Raymondville, Texas on the date of the trial and he was not called by the prosecution. Petitioner asserts that he was prejudiced in some unspecified fashion by

the absence of Deputy Douglas, despite the fact that the trial judge (as we shall see) located the police officer and had him available to testify the following morning. Petitioner declined to call Deputy Douglas.

In any event, the record shows that petitioner's representations are simply not correct. At trial, counsel for petitioner stipulated that although Douglas was on the prosecution's witness list, the defense was advised before the trial that the state would probably not use him and that no subpoena had been issued to him.[1] Thus, counsel for petitioner knew before the trial that Douglas had not been subpoenaed and was not likely to be present at the trial.

Similarly, the asserted use of "false" testimony by the prosecution and its alleged "deliberate failure" to disclose the line-up report to the jury have no basis in the record. The prosecution admittedly disclosed the contents of the report to the defense before trial. Since the author of the report had already testified at the trial of a co-defendant that the report was in error, the prosecution was certainly under no obligation to accept the report as true or to present it to the jury. The prosecution discharged its responsibility under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it made the defense aware of the report. It was then up to the defense to make such use of the report as it saw fit. The record does not indicate that the prosecution permitted Brown to testify "falsely" in stating that he identified Trussell at the pretrial line-up. Petitioner would have us accept the report as true and declare that Brown's sworn testimony is false. We have no basis in the record for doing that and neither did the prosecution. The record shows that the prosecution here was completely open with the defense concerning the existence of this

report, as well as Deputy Douglas' testimony concerning it and there is no basis now to charge the state with improper conduct.

**II.**

■ Next petitioner argues that he was not allowed to cross examine Brown regarding his alleged failure to identify Trussell at the line-up, thus violating his Sixth Amendment right of confrontation. Such a restriction, if actually imposed, would certainly raise serious question regarding the fairness of petitioner's trial; *Greene v. Wainwright,* 634 F.2d 272 (5th Cir.1981), but here again, the record does not support the charge.

When Brown was called by the state on its case in chief, defense counsel cross examined him but did not question him regarding the offense report or regarding the pretrial line-up. The report had not yet been called to the attention of the trial judge and there is nothing in the record indicating that the judge imposed any restriction upon counsel in cross examination. Clearly there is no basis in fact for any claim of restriction of cross examination as to Brown's initial appearance upon the witness stand.

Brown was called in rebuttal by the state and testified that he identified Trussell at the line-up. Again, counsel for petitioner did not cross examine regarding the pretrial line-up and did not mention the report. The record does not show any attempt by petitioner to cross examine Brown at any stage of the proceedings regarding the pretrial line-up or regarding the report. At no point does the record disclose that counsel ever asked permission of the court to propound those questions or that counsel ever attempted to propound any question along that line.

---

**1.** The transcript reads: "Ms. Wiley: Your Honor, for the record and as part of the bill, if I need to be sworn, I would like it to be stated in the record that I had advised Defense counsel that the State did not believe they would be using J.B. Douglas for this case; and that on the witness list tendered to Defense counsel prior to the beginning of evidence in this case, that on that list, there is no marking that he

would be subpoenaed by the State, there not being any X in front of his name, just that his name is listed on there as being Douglas with the "S.O." Mr. Thompson: Yes. Ms. Wiley: And that all materials—Mr. Thompson: We will agree with that, Judge; and we sure have no reason to have the lady sworn in as an officer of the Court."

Petitioner's argument is that "any attempt at cross examination of Brown would have been futile" because the trial judge had already sustained the state's objection and had admonished counsel not to mention it in the presence of the jury.

The record shows that when the report was first called to the attention of the court during the defense's direct examination of the custodian, when it was offered as a business record, the trial judge sustained the objection but noted that it was exculpatory evidence and that it ought to be presented to the jury and that the court was interested in helping the defense find a way to properly present the matter to the jury.[2]

The judge did inform counsel for petitioner that he could not present the matter to the jury in "the state this record is in now" nor could he question the custodian regarding the contents of the report. The record reveals, however, that the court made every effort to, and did in fact, locate Deputy Douglas and advised petitioner that he would be permitted to cross examine Deputy Douglas about that report and any other report which Deputy Douglas might have offered.[3]

The record shows that the only restriction imposed by the trial judge upon counsel for the petitioner was that he could not examine the custodian of the records about the contents of the report because the custodian was not the author of the report. As soon as Brown testified in rebuttal that he had identified Trussell at the pretrial line-up, the record was in a different state than when the custodian testified and there is no indication in this record that the trial judge would have restricted cross examination of Brown concerning his identification, had there been any attempt to do so. As we shall see, the defense did not really want to cross examine Brown about the pretrial line-up. This claim is completely lacking in any factual basis.

III.

■ Petitioner's most serious claim is that the state trial judge excluded the exculpatory evidence contained in the pretrial line-up report from the jury, thus denying the defense the opportunity to present crucial evidence. As we have noted, the case against Trussell was circumstantial and Brown was the only person who identified him as one of the four men who drove up to and departed from the Co-op Gin. Without Brown's identification the prosecution's

2. The transcript notes the following comments in this connection by the trial judge: "The Court: I think the position that it seems to me like we are in, assuming that we gave you access to it, in order to question this witness about it, you are going to be stacking hearsay on hearsay, it seems to me...."

"The Court: And I can see where there is some exculpatory matter in here, maybe that could be explained; but as the report reads, I don't think there is any question but what there is some exculpatory matter in it as the statement reads, but from a witness that is not here...."

"The Court: ... [T]his is a little bit different situation, it seems to me. Well, I am going to let him look at it and then I am going to give you your bill; I don't see any way in the world that we can have this thing admitted in front of that jury, *the state the record is in now*." (emphasis supplied)

3. "Mr. Thompson ... Now, do I understand that the Court would deny me the right to ask the question to Mr. Smith as to whether or not T.B. Brown viewed a lineup according to an offense report prepared by J.B. Douglas, and J.B. Douglas reported that Mr. T.B. Brown could not identify any of the individuals con-

tained in the lineup, including Jerry Wayne Trussell on 8–31–76 at 3:05 P.M.? The Court: That's right. That will be refused. Mr. Thompson: Very good. And Your Honor, further may I—for the purpose of the bill of exception, may the record reflect also that I would propound a question about the color of the pickup on the offense report, and would that be denied, a response in this regard? *The Court: Right. As far as the Court's ruling, it will be that you are not to cross examine this witness* [the custodian of the records] from this particular Defendant's Exhibit Number 1 for the reason we have already stated. Mr. Thompson: About any of the matters contained therein? The Court: Well, yes, that's the ruling. As I understand, this is an offense sheet prepared by someone other than this witness, is that right? Mr. Thompson: Fine, Your Honor. The Court: By Mr. Douglas? Mr. Thompson: Yes, Fine, Your Honor. And I retender—The Court: Of course, now, you understand that *if Mr. Douglas is available, you would certainly be able to cross examine him from any of his records* that he prepared." (Emphasis supplied)

case against petitioner was considerably weaker. Surely, if there was evidence that Brown could not identify Trussell at the pretrial line-up and if the state evidentiary rules prevented the defense from presenting that evidence to the jury, a due process issue of significant dimension would be presented. *See e.g. Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 312 (1973); *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967); *McMorris v. Israel,* 643 F.2d 458 (7th Cir.1981).

■ In order to raise the constitutional issue, however, petitioner must first show that the trial judge did in fact prevent him from presenting the crucial evidence to the jury.[4] The action of the state judge must be shown to have denied the defendant a fair trial, hence, due process, and not merely to have constituted a possibly erroneous ruling under state law. Unfortunately for petitioner's claims, the record shows that the state judge did afford the petitioner a fair trial by giving him an opportunity to adduce the facts.

Although the trial judge refused to admit the report as a business record, the record shows that he continued to search for a

method by which the defense might properly present the evidence to the jury. The defense insisted that the exhibit must be received as a business record upon the testimony of the custodian alone but, when the judge located Deputy Douglas, the author of the report, and had him available to testify, the defense lost all interest in his testimony.

After a recess the trial judge again brought up the subject of the report, indicating that he would attempt to locate Deputy Douglas and make him available as a witness. Counsel for petitioner again insisted that the report be received in evidence strictly upon the testimony of the custodian of the records. Shortly after the noon recess the judge advised petitioner and his counsel that Deputy Douglas was in Raymondville, Texas and that he was standing by to be available as a court witness, and at the request of the defense, could be present in court "in the morning." The court also noted that there were two FBI agents who were present at the line-up who could possibly serve and offered both officers as witnesses to the defense. Counsel for petitioner and petitioner personally, declined to call Deputy Douglas or any of the other witnesses offered.[5]

---

**4.** The due process rights of an accused have been adequately protected if he has been given the *opportunity* to present his defense, to cross examine witnesses and to present testimony, see e.g. *Washington v. Texas,* 388 U.S. 14, 20, 87 S.Ct. 1920, 1923–1924, 18 L.Ed.2d 1019 (1967); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *In Re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). How the defendant chooses to exploit that opportunity is an entirely different concern, for the Constitution does not necessarily serve as a guarantee of counsel's choice of trial strategy.

**5.** The transcript shows: "The Court: ... Mr. Thompson, the Court has been looking at some authorities and trying to take another look at your objection relative to D–1 and trying to make proof on it. I have taken it on my own to try to locate the witness that prepared that statement, Officer J.B. Douglas. We may have access to him. He is out of town and it is my understanding and information he is in Raymondville, but we are trying to locate him. If we can get a line on him, I intend to try to get him back in here prior to the time that you finish putting on your evidence so that you may, under one of the exceptions, maybe make proof on what is contained in the one. However, if we can't, then of course there are two

or three other law enforcement officers that apparently were viewing this lineup, and if we cannot get Mr. Douglas in, *then the Court fully intends to give you sufficient time to try to run down any and all of the other officers that were present* that could give you the same type proof that I think maybe you may be entitled to. So with that in mind, if you will, kind of hold your evidence open until the Court can find out something; *because I am very interested in this man being able to prove anything that may be exculpatory* or might help him in his defense." (Emphasis supplied)

In response to counsel's continued assertion that the report should be admitted in evidence as a business record, the judge replied:

"The Court: I understand. And of course the Court's concern is that when you do just introduce a record or a written report, it appears to me that fair play would dictate the other side has a chance to explain any inconsistencies, if there are any, or anything else about it and enlarge on it. And so that is actually the basis of my refusal at this time, is because it doesn't I don't think give both sides the same opportunity to it. But I am concerned that the Defendant, if he can do so, through a legitimate legal way, I think there is some proof in there that should be offered to the jury and at the same

While the court did sustain the objection to admission of the report as a business record, the trial judge not only explained to the defendant a method by which the evidence could be presented to the jury but he also located the author of the report and made him available to testify. Petitioner declined to accept the offer.

Petitioner continued to insist that this evidence had to be presented to the jury in one way and one way only and that was as a business record with no explanation and no opportunity for the state to explain it.

■ There was certainly a reason why counsel was so insistent. Counsel knew that Deputy Douglas, its author, had testified in another trial that the report was not correct and he also knew that Deputy Douglas was out of town on police business during the trial. It is obvious that counsel wanted to get the report to the jury without benefit of any explanation from Deputy Douglas and without the testimony of those persons who were present at the pretrial line-up. Although the Fifth Amendment insures the absolute right of a criminal defendant to present exculpatory evidence to the jury, he does not have the right to compel its presentation in a particular fashion, nor can he prevent the prosecution from rebutting, cf, *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. State of Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Whether then defendant should have been required to prove the point in this way as a matter of state law is not the issue. "[I]t is elementary that questions of state law cannot be raised on federal habeas." *Llamas-Almaguer v. Wainwright,* 666 F.2d 191 (5th Cir. 1982) ... The question is whether the state procedure denied him due process.

The record shows that counsel for the defendant did not cross examine Brown about the pretrial line-up and declined to call Deputy Douglas on cross examination. While two F.B.I. agents were also listed as witnesses to the line-up and the trial judge offered to make them available to counsel, he declined this offer (note 5, supra). Finally,

time I think the State ought to be in a position to be able to rebut, if they can; or if they can't, of course, that's their business."

Just prior to the noon recess, the court informed counsel for petitioner:

"The Court: Mr. Thompson, getting back to our other matter that I informed you about, I will know something probably between now and 1:30 as to whether or not the witness, Douglas, will be available. If so, I will at least make it known to you and your client, at which time you all can decide what you want to do."

At the beginning of the Thursday afternoon session, the Court informed counsel:

"The Court ... Mr. Thompson, during the noon hour, for your and Mr. Trussell's edification, through the work of the Lubbock Sheriff's Office here in Lubbock, we have located Deputy J.D. Douglas who is in Raymondville, Texas at this time and standing by for instructions.

This is in regard to your Defendant's Exhibit Number 1 and your bill of exceptions relative to the report that Mr. Douglas made.

Now, the Court is prepared at this time to offer the Defendant and his counsel an opportunity to have Officer Douglas brought back, *which we can get him in here, I think by in the morning, to tender him as a witness in your behalf, where you will not be bound by his testimony.*

*In other words, you will be calling him as a witness, called by the Court,* if we have to, in order to try to get—prove by him anything that you can relative to your bill of exceptions that you took.

Likewise, the Court has noted on the Defendant's Exhibit Number 1 that there were two other FBI agents apparently present when this lineup was conducted. And of course, if the Defendant can develop anything from either of these officers or any other source, why the Court will be inclined to grant whatever kind of continuance or recess or whatever we have to, in light of the way this has all come to life.

So at this stage, I need to tender this opportunity to the Defendant, in all fairness, in trying to keep from the Defendant's having access to anything that might be helpful to him.

So if you want to confer with your client a minute, why go right ahead."

After conferring, counsel for defendant stated:

"Mr. Thompson: Your Honor, I have counseled with my client and Judge, at this time, we respectfully decline the tender of the witness and Your Honor, at this time, we offer, retender, reproffer and reurge admission of Defendant's Exhibit 1, and reurge and retender our bill of exceptions and all of the testimony thereto; ...

The Court: All right. The Court will note the decline by the Defendant and his attorney.

Mr. Trussell, does this comport with your—is this okay with you?

*Jerry Wayne Trussell: Yes, sir, it's fine, Your Honor.*" (Emphasis supplied)

the record shows that the defense called Jorgensen, Brown's companion, as a witness and examined him concerning the arrival and departure of the four men at the Frenship Co-op Gin but asked no questions concerning the pretrial line-up.

A criminal trial, just as any other American trial, is a search for truth. Had petitioner been interested in truth, he could have examined or cross examined Jorgensen, the two F.B.I. agents and Brown himself about Brown's alleged failure to identify Trussell at the pretrial line-up. Indeed, petitioner could have accepted the trial judge's offer and confronted Douglas with the line-up report and cross examined him about it and about Brown's alleged non-identification. The fact that he elected to do none of these things but rather insisted that the jury have the report without explanation establishes his purpose. This was nothing more than a clever, but unsuccessful, attempt by astute counsel to fire an unanswered salvo at the prosecution, using the state's own report. It was a calculated trial strategy. Its failure raises no constitutional questions.

The transcript clearly shows that an able and conscientious state trial judge protected plaintiff's rights throughout these proceedings and took every step to insure that he had a fair trial, including the opportunity to present to the jury all of the evidence concerning this pretrial line-up report. Petitioner chose not to utilize that which the trial judge made available.

The record of this case shows no error; on the contrary, it affirmatively demonstrates that plaintiff received a fair trial and that he has been duly convicted in accordance with the laws of the state of Texas and the Constitution of the United States.

### IV.

Petitioner's claim of insufficiency of the evidence to support a conviction is so lacking in merit that it deserves no comment.

AFFIRMED.