Robert ALLEN, Petitioner–Appellee, Cross–Appellant,

v.

T.L. MORRIS, Respondent–Appellant, Cross–Appellee.

Nos. 85–3824, 85–3870.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 10, 1986.

Decided April 26, 1988

Rehearing and Rehearing En Banc Denied June 15, 1988.

Cordelia A. Glenn, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellant, cross-appellee.

Michael G. Dane, Federal Public Defender, Cleveland, Ohio, for petitioner-appellee, cross-appellant.

Before: KRUPANSKY and RYAN, Circuit Judges; and EDWARDS, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Respondent-appellant, cross-appellee T.L. Morris, Superintendent of the Southern Ohio Correctional Facility, appealed from the district court's order granting petitioner-appellee, cross-appellant Robert Allen's (Allen) petition for a writ of habeas corpus in this action commenced pursuant to 28 U.S.C. § 2254. Allen cross-appealed from the district court's rejection of his asserted alternative theories for issuance of the writ.

This case involved a brutal murder as disclosed by the following facts. On the evening of July 23, 1979, Allen and Bruce Karp (Karp) telephoned Thomas Liddy (Liddy) seeking to purchase illegal narcotics from him. Liddy was a "manufacturer" or "processor" of illegal narcotics as evidenced by drug manufacturing equipment later discovered in and confiscated from his home by police. Karp, a drug dealer who had purchased drugs from Liddy via a third person on previous occasions, was desirous of obtaining drugs directly from Liddy for

**612**

expeditious resale to raise money to satisfy certain of his debts before leaving the state. At approximately 3:00 a.m. the following morning, Karp and Allen proceeded by automobile to Liddy's home located on Sylvia Drive in Eastlake, Ohio. Karp was armed with a 12 gauge double barreled sawed off shotgun and Allen with a .38 caliber Smith and Wesson revolver. They drove to within a block of Liddy's residence, parked the motor vehicle on a side street, and proceeded on foot to Liddy's residence. At Liddy's residence, Karp, armed with his shotgun, positioned himself behind a utility pole located in the approximate area of the front porch.

Allen ascended the steps onto the porch and knocked on the front door. Liddy opened the door and asked him what he wanted. Allen responded that he was desirous of conferring with Liddy. At that point, Liddy produced a revolver and fired. Allen returned Liddy's fire through the open doorway. Allen then moved to the side of the door and shouted to Karp "I'm going to kill this mother fucker." He then fired four shots into the house through a window located next to the door.

After this brief exchange of gunfire had ceased, Allen again approached the doorway where he observed Liddy prostrate and defenseless on the floor in the doorway, as a result of a gunshot wound. Allen entered the dwelling and fired another shot into Liddy's body at close range.

As Liddy lay fatally wounded on the floor, Allen moved into the kitchen and began rummaging through the drawers searching for narcotics. Karp entered the house and pursuaded Allen to leave. The two exited the house and fled. Allen reached the automobile before Karp and abandoned Karp at the scene.

A neighbor who had heard the disturbance investigated, and upon finding Liddy lying on the floor severely wounded, immediately notified the police. Robert Eden,

an Eastlake, Ohio police officer, arrived at the scene shortly thereafter and found Liddy still alive; however, Liddy died at the scene shortly thereafter.

Karp was apprehended on July 25, 1983 and incarcerated in the Lake County Jail for approximately three months before he was tried and convicted for aggravated murder as a result of the Liddy murder. While an inmate in the jail, Karp became acquainted with David Holbert (Holbert) who was also a prisoner at the facility.

Holbert testified for the prosecution at Karp's trial. After refreshing his memory from written notes he had made of his conversation with Karp,[1] Holbert stated that Karp had admitted killing Liddy. Karp was subsequently convicted of aggravated murder in connection with Liddy's death.

Allen was indicted several months later on charges of aggravated murder with prior calculation and design, Ohio Rev.Code § 2903.01(A), aggravated murder while committing or attempting to commit aggravated robbery, Ohio Rev.Code § 2903.01(B), murder, Ohio Rev.Code § 2903.02, voluntary manslaughter, Ohio Rev.Code § 2903.03,[2] and aggravated robbery, Ohio Rev.Code § 2911.01. A jury trial was conducted in July, 1980.

At trial, the government presented Karp as a witness, who testified to the events of Liddy's murder. In addition, Karp testified that he had "ditched" the sawed off shotgun after having been abandoned at the scene of the crime by Allen, and that Allen had disassembled the .38 caliber weapon, flushed the smaller parts down the toilet, and threw the remaining components into Lake Erie.

The prosecution also introduced the testimony of several witnesses who corroborated Karp's testimony. Three separate witnesses testified that Allen admitted to them that he had killed Liddy. One of Liddy's neighbors testified that on the

1. Holbert testified that he had made the notes a few minutes after he had talked to Karp. At trial, the court permitted Holbert to use his written notes, identified as State's Exhibit 56, to refresh his memory. *See* Ohio R.Evid. 612.

2. The state trial court, upon Allen's motion, dismissed the voluntary manslaughter count during trial.

night of the murder he heard what he thought were firecrackers, and upon glancing out the window of his home, he saw two men running by his house, one of whom got into a parked car and drove away leaving the other behind. The shotgun Karp had used on the night of the murder was found bearing his fingerprints and was conclusively determined not to be the murder weapon.

In his defense, Allen attempted to introduce the transcript of Holbert's testimony at Karp's trial (the Holbert transcript) pursuant to Ohio R.Evid. 804(B)(1) which, at the time of Allen's trial, provided:

> **(B) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> **(1) Former testimony.** Testimony given as a witness at another hearing other than a preliminary hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.[3]

For the transcript to qualify for admission under Rule 804(B)(1), Allen was required to prove that Holbert was "unavailable" for trial. Ohio R.Evid. 804(A) defines the term "unavailability" and provides, in part:

> **(A) Definition of unavailability.** "Unavailability as a witness" includes situations in which the declarant:
>
> \*     \*     \*     \*     \*     \*
>
> (5) is absent from the hearing and the *proponent* of his statement has been unable to procure his attendance ... by process or other reasonable means. A declarant is not unavailable as a witness if his ... absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of prevent-

ing the witness from attending or testifying.

Ohio R.Evid. 804(A)(5) (emphasis added).

To satisfy his burden of proving Holbert's unavailability, Allen's trial counsel subpoenaed William Rady (Rady), Holbert's probation officer, as a defense witness. On *voir dire* examination outside the presence of the jury, Rady testified that Holbert was in violation of the terms of his probation, that the probation department was unaware of his whereabouts, and that it had issued a warrant for his arrest. The state trial court refused to permit Rady to specify the action he had taken to locate Holbert.

Allen's counsel next presented Anthony J. Vitale (Vitale), a Lake County, Ohio Sheriff's deputy for *voir dire* examination. Vitale testified that he had been unsuccessful in serving the probation department's warrant for Holbert's arrest and that he had also been unsuccessful in serving a subpoena for Holbert to appear at Allen's trial, which had been issued by Allen's counsel without listing Holbert's address. The state trial court again refused to permit Vitale to specify the action he had taken to locate Holbert.

During these *voir dire* examinations, the trial court expressly stated that defense counsel had the burden of implementing independent efforts to locate Holbert and because the efforts Rady and Vitale did not qualify as efforts independently pursued by the defendant to locate Holbert their testimony as to the action that they individually exerted to locate Holbert was, therefore, irrelevant. Counsel advised the court of no independent efforts other than issuing an "address unknown" subpoena for Holbert to appear at trial. The court thereafter concluded that defense counsel's efforts were insufficient to demonstrate Holbert's unavailability and excluded the transcript of his previous testimony.

At the conclusion of the trial, the jury convicted Allen of aggravated murder in committing or attempting to commit aggravated robbery and of aggravated robbery. He was found not guilty of aggravated

---

**3.** The rule has since been amended with respect to testimony given at a preliminary hearing.

murder with prior calculation and design and of murder. He was sentenced to 7 to 25 years for aggravated robbery and to life for aggravated murder to be served concurrently.

Allen appealed his convictions to the Ohio Court of Appeals for the Eleventh Appellate District. Among his nineteen assignments of error, Allen asserted that he was denied a fair trial and due process of law in violation of the United States Constitution because the trial court refused to admit the Holbert transcript. The state court of appeals overruled all assignments of error and affirmed the convictions. Allen then sought review by the Ohio Supreme Court which denied leave to appeal.

On February 24, 1984, Allen commenced the present action with his petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio. Allen asserted seven constitutional errors, one of which alleged that the exclusion of the Holbert transcript denied him the constitutional right to present evidence in his behalf. The district court concluded that Allen had demonstrated Holbert's unavailability and therefore granted the writ. The State of Ohio thereafter commenced this timely appeal.

■ Initially, this court notes that the district court erred by determining that Allen had proved Holbert's unavailability as a prerequisite to admission of the transcript of the former testimony under Ohio R.Evid. 804. A federal court exercising its habeas corpus jurisdiction is bound by the state trial court's factual finding on that issue. 28 U.S.C. § 2254(d).

■ In considering a petition for a writ of habeas corpus, "[t]he federal courts must defer to a state court's interpretation of its own rules of evidence and procedure." *Machin v. Wainwright* 758 F.2d 1431, 1433 (11th Cir.1985) (citations omitted). *See also Brewer v. Overberg,* 624 F.2d 51, 52 (6th Cir.1980), *cert. denied,* 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981). The state trial court in this case

interpreted Ohio R.Evid. 804(A) to require the proponent of the hearsay evidence, i.e., former testimony, to initiate and pursue *independent* efforts to prove the unavailability of a witness as a condition precedent to its admission. The reviewing Ohio courts found no error in that interpretation. Accordingly, the state court's decision that Ohio R.Evid. 804(A) obligated Allen's counsel to initiate and exhaust meaningful independent efforts to locate Holbert in order to prove his unavailability is binding upon this court. *See Oviedo v. Jago* 809 F.2d 326, 328 (6th Cir.1987) ("Whether or not the [state court] complied with the procedural requirements of [state] law is not a matter for this court to decide on a petition for habeas corpus relief. The federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure.") (citations omitted).

■ Under the interpretation of the Ohio rule pronounced by the Ohio courts, the exclusion of Rady's and Vitale's testimony concerning their respective efforts to locate Holbert was proper because such evidence was simply irrelevant to prove Holbert's unavailability. The Ohio rule requires the proponent of evidence to engage in his own independent attempts to seek out an absent witness as a condition precedent to qualifying the unavailable witness' testimony as admissible. Testimony reflecting upon the action others have pursued to locate the missing witness for an unrelated purpose, i.e., for violation of the terms of probation or service of a subpoena, does not qualify as determining the unavailability of the witness under the Ohio rule and is, therefore, irrelevant. Stated differently, if the state court's interpretation of Ohio R.Evid. 804 was correct as a matter of state law, *as this court must assume,* then the rule was obviously correctly applied since Rady's and Vitale's excluded testimony was, *under Ohio law,* irrelevant to the proper establishment of Holbert's unavailability.[4] The exclusion of

---

4. Although Allen casts doubts upon the state court's interpretation of Ohio R.Evid. 804(A),

that interpretation is not unreasonable. Subsection (A)(5) provides that a witness is unavailable

irrelevant evidence cannot implicate constitutional concerns. *United States v. Kasto*, 584 F.2d 268, 272 (8th Cir.1978), *cert.* denied, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed. 2d 486 (1979).

■ Accordingly, the issue presented on this appeal is whether Ohio R.Evid. 804, *as interpreted and applied* by the state courts in this case, denied Allen the *opportunity* to present evidence on his behalf in violation of his right to due process under the Fourteenth Amendment to the United States Constitution.[5] "[D]ue process is, in essence, the right to a *fair opportunity* to defend against the state's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) (emphasis added).

The due process rights of an accused have been adequately protected if he has been given the *opportunity* to present his defense, to cross examine witnesses and to present testimony, see e.g. *Washington v. Texas*, 388 U.S. 14, 20, 87 S.Ct. 1920, 1923–1924, 18 L.Ed.2d 1019 (1967); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *In Re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 2d 682 (1948). How the defendant chooses to exploit that opportunity is an entirely different concern, for the Constitution does not necessarily serve as a guarantee of counsel's choice of trial strategy.

*Trussell v. Estelle*, 699 F.2d 256, 262 n. 4 (5th Cir.), *cert. denied*, 464 U.S. 853, 104 S.Ct. 168, 78 L.Ed.2d 153 (1983) (emphasis in original).

The accused does not have an unfettered right to offer testimony that is incompe-

tent, privileged, or otherwise inadmissible under standard rules or evidence.

\* \* \* \* \* \*

The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case. \* \* \* The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, although not always inflexible, rules relating to the identification and presentation of evidence.

*Taylor v. Illinois*, —— U.S. ——, ——, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988).

Analyzing the exclusion of the Holbert transcript in this context, it is clear that Allen was not denied the opportunity to present evidence on his own behalf. Rule 804(A) was not interpreted so as to preclude the admission of evidence favorable to his defense. Rather, it was interpreted merely to require the proponent of the evidence to exert independent efforts to locate the unavailable witness. If, after complying with the state evidentiary rule, Allen was unable to locate Holbert, then the transcript would have been admissible. Alternatively, Allen may have succeeded in his efforts to locate Holbert resulting in his appearance at trial for the purpose of testifying before the jury. That Allen deliberately elected not to initiate and pursue independent efforts to discover Holbert's

---

if he "is absent from the hearing and *the proponent of his statement has been unable to procure his attendance* ... by process or other reasonable means." The rule specifies that *the proponent,* not sheriff's deputies or probation officers, must be *"unable to procure his attendance...."* The rationale behind this interpretation is that those persons seeking the absent witness for purposes other than attendance at another person's trial may not be as diligent in attempting to locate the witness as a criminal defendant who deems the witness' testimony critical to his defense.

5. Although this right has its origins in the Sixth Amendment's right to compulsory process, since its incorporation into the Due Process Clause of the Fourteenth Amendment in *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), it has been analyzed by most courts without reference to the Sixth Amendment. *United States v. Hammond*, 598 F.2d 1008, 1012, n. 3, *modified on rehearing on other grounds*, 605 F.2d 862 (5th Cir.1979).

whereabouts does not suggest that he was denied the opportunity to present his defense. There is simply no due process violation where the only reason relevant evidence was excluded was the defendant's refusal or failure to seek its proper admission under the appropriate rules of evidence. *Trussell*, 699 F.2d at 263–64.

Allen's reliance upon the Supreme Court's decisions in *Chambers v. Mississippi, supra,* and *Green v. Georgia, supra,* wherein the court discussed a defendant's constitutional right to present evidence on his own behalf, to support his claims is misplaced. The distinction between the facts of these cases and the factual situation encompassed in the case at bar is readily apparent. In the case at bar, Allen was not precluded from introducing the exculpatory evidence, but rather was only required to comply with state evidentiary rules in seeking its admission. In *Chambers* and *Green,* the exculpatory evidence was excluded, and *"no other avenues were available to prove the defendant's story."* *Perry v. Rushen,* 713 F.2d 1447, 1452 (9th Cir.1983) (emphasis added), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). In other words, the defendants in *Chambers* and *Green* were denied the *opportunity* to present exculpatory evidence, while Allen was not.

Allen's trial counsel pursued a deliberate trial strategy which failed. It is obvious from the transcript of the record that Allen's counsel made no independent efforts to locate Holbert because he was aware that Holbert's contemporaneous notes, used to refresh his memory at Karp's trial, implicated both Karp and his "buddy" in Liddy's murder. The transcript of Holbert's testimony at Karp's trial had not disclosed Karp's implication of Allen in the killing simply because that had not been an issue at Karp's trial. Had Allen actually found Holbert and presented him as a defense witness, he risked the probability that Holbert would have testified, consistently with his contemporaneous notes, that Karp implicated himself *and his "buddy"* in the murder. Rather, Allen's counsel attempted "to fire an unanswered salvo at the prosecution...." *Trussell,* 699 F.2d at

264. This "calculated trial strategy" failed, and its "failure raises no constitutional questions." *Id.* "[T]he Constitution does not necessarily serve as a guarantee of counsel's choice of trial strategy." 699 F.2d at 262 n. 4. *See also Taylor,* 108 S.Ct. at 656–57.

Furthermore, the burden placed upon Allen and his counsel to pursue independent efforts to locate Holbert was minimal. From the very transcript Allen sought to introduce, it was patently apparently that Holbert lived with his parents in Eastlake, Ohio at a disclosed address. He had also disclosed the names and addresses of prior employers and identified his father as a veteran of the Cleveland Police Department as well as other pertinent information which would have been helpful to determine his whereabouts if the information had been pursued. Allen, however, made no effort whatsoever to visit or telephone Holbert's parents. He contacted neither the Cleveland Police Department nor Holbert's prior employers; in sum, he did nothing beyond causing an "unknown address" subpoena to issue. Under these circumstances Allen was not deprived of his right to due process under the Fourteenth Amendment to the United States Constitution.

In sum, Vitale's and Rady's testimony concerning their action to locate Holbert was irrelevant under Ohio R.Evid. 804, which requires the proponent of the evidence to initiate independent efforts to locate an absent witness as a prerequisite to the admission of his former testimony. The only issue before this court was whether the operation of the Ohio rule, as interpreted by the Ohio court, deprived Allen of the *opportunity* to present *relevant* evidence, i.e., the Holbert transcript, in his defense. For the foregoing reasons, this Court concludes that it did not.

■ This court also concludes that the alternative theories urged in Allen's cross-appeal to support the grant of the writ are without merit. Allen first asserted that he was denied his right to due process of law by the state trial court's refusal to instruct

the jury on self defense as requested. The failure to give a requested self defense instruction, however, does not deprive the defendant of his constitutional right to due process if the evidence produced during trial was insufficient to warrant such an instruction. *Melchior v. Jago* 723 F.2d 486, 493–94 (6th Cir.1983), cert. *denied*, 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984). *See also Zemina v. Solem*, 573 F.2d 1027, 1028 (8th Cir.1978). The district court correctly determined that the evidence before the state trial court in the case at bar was insufficient to support the requested self defense instruction.

■ Allen also asserted that the state trial court committed constitutional error by refusing to instruct the jury concerning voluntary and involuntary manslaughter, lesser included offenses of aggravated murder. *See Ohio v. Solomon*, 66 Ohio St.2d 214, 421 N.E.2d 139, 143 (1981). Although "the failure of a state court to instruct the jury on lesser included offenses raises a question cognizable on habeas corpus review," *Brewer v. Overberg* 624 F.2d 51, 52 (6th Cir.1980) (per curiam), cert. *denied*, 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981), due process entitles a criminal defendant to an instruction on a lesser included offense "*only* when the evidence warrants such an instruction." *Hopper v. Evans* 456 U.S. 605, 612, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367 (1982) (emphasis in original) (citing *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)). *See also Ferrazza v. Mintzes*, 735 F.2d 967, 968 (6th Cir.1984). Because the evidence presented at Allen's state court trial was insufficient to support the requested lesser included offense instructions, the district court correctly concluded that this alleged constitutional error was also without merit.

For the foregoing reasons, the district court's grant of Allen's petition for a writ of habeas corpus is REVERSED, and this case is REMANDED to that court with instructions to DISMISS the petition.