7 F.3d 235
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James K. SMITH, Petitioner-Appellant,
v.
Arthur TATE, Jr., Supt., Respondent-Appellee.
 Nos. 92-3463, 92-4023.
 United States Court of Appeals, Sixth Circuit.
 Sept. 3, 1993.
 
 On Petition for writ of Habeas Corpus from the United States District Court for the S.D. Ohio, Nos. 90-00416, 90-00417; D. Spiegel, J.
 S.D.Ohio
 AFFIRMED.
 Before KENNEDY and SILER, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner James K. Smith challenges the denial of his petition for a writ of habeas corpus. As grounds for reversal, Smith claims that (1) he was denied due process through the introduction of "other acts" evidence, (2) his right of confrontation was violated through the introduction of transcribed testimony, (3) he was denied due process through the exclusion of a defense witness's testimony, and (4) he was denied due process through the introduction of evidence relating to an alleged bribe attempt. For the following reasons, the district court will be affirmed.
 
 Background
 
 2
 On February 4, 1986, an officer was dispatched to the Reading Trailer Park in Hamilton County, Ohio, to investigate a reported death. Smith met the officer at the door of his trailer and identified the body of Steven Tittle inside. According to Smith, he and Tittle had been drinking and using illegal drugs. Smith said he cleaned the trailer and disposed of the drugs before the officer's arrival. Initially, the autopsy report cited acute bronchial pneumonia and purulent bronchitis as the cause of Tittle's death. However, the Hamilton County Coroner's office later ran heroin screen tests, and, as a result of these tests, modified its autopsy report to list heroin ingestion as the cause of death.
 
 
 3
 On August 29, 1986, in Hamilton County, Smith was found guilty of aggravated murder, murder, and tampering with evidence in connection with Tittle's death. Smith was sentenced to life imprisonment for aggravated murder and two years imprisonment for tampering with evidence.
 
 
 4
 On April 19, 1986, Warren County, Ohio, Sheriff's deputies responded to a call at the Kings Island Campground. Smith met the deputies at his trailer and told them that the body of Robert Wright was inside. According to Smith, he and Wright had been using illegal drugs. Smith said he searched for drugs and cleaned up the trailer before calling the sheriff's office. Deputy Coroner Paul Jolly determined that Wright died of acute morphine intoxication.
 
 
 5
 On July 19, 1987, in Warren County, Smith was found guilty of aggravated murder, tampering with evidence, and obstruction of official business in connection with Wright's death. He was sentenced to life imprisonment for aggravated murder, two years imprisonment for tampering with evidence, and ninety days imprisonment for obstructing official business. The sentence for Wright's murder was to be served consecutively to the sentence for Tittle's murder.
 
 
 6
 Smith appealed both convictions to the Ohio Court of Appeals. Although the Court of Appeals reversed the trial court in both cases, the Ohio Supreme Court later reversed the Court of Appeals and ordered Smith's convictions and sentences reinstated. On May 25, 1990, Smith filed two separate petitions for habeas corpus relief in the district court, which denied them.
 
 Analysis
 
 7
 1. Smith did not fairly present his due process claim based on the introduction of "other acts" evidence.
 
 
 8
 Smith first claims that his due process rights were violated through the introduction of "other acts" evidence at the Hamilton and Warren County trials. Before this court can address the merits of this claim, Smith must show that he exhausted available state remedies. 28 U.S.C. § 2254(b). " '[F]or a claim to be exhausted, the state court system must have been apprised of the facts and legal theory upon which the petitioner bases his assertion.' " Franklin v. Rose, 811 F.2d 322, 325 (6th Cir.1987) (quoting Galtieri v. Wainwright, 582 F.2d 348, 353 (5th Cir.1978)); see also Murray v. Carrier, 477 U.S. 478 (1986). Smith must have fairly presented his claim in state court "as a federal constitutional issue--not merely as an issue arising under state law." Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir.1984).
 
 
 9
 A petitioner may apprise the state courts of his federal constitutional claims without citing " 'book and verse on the federal constitution.' " Picard v. Connor, 404 U.S. 270, 278 (1971) (quoting Daugharty v. Gladden, 257 F.2d 750, 758 (9th Cir.1958)). Thus,
 
 
 10
 a state defendant may fairly present to the state courts the constitutional nature of his claim [through] ... (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts well within the mainstream of constitutional litigation.
 
 
 11
 Franklin, 811 F.2d at 326 (emphasis omitted) (quoting Daye v. Attorney Gen., 696 F.2d 186, 193-94 (2d Cir.1982)). Smith argues that he fairly presented his due process claim to the state courts inasmuch as his state court briefs contained passages explaining Ohio R.Evid 404(B), references to his right to a fair trial, mention of a due process violation, and citations to "numerous federal court opinions."
 
 
 12
 Smith did not fairly present his due process claim to the Ohio courts in any of the ways recognized by Franklin. First, the passages explaining Ohio R.Evid. 404(B) do not discuss due process and could not have fairly presented a due process claim to the Ohio state courts.
 
 
 13
 Second, Smith's vague references to his fair trial right did not fairly present his due process claim because any fair trial claim raised by these references does not appear within a "factual matrix that is 'well within the mainstream of due process adjudication.' " Daye, 696 F.2d at 193 (quoting Johnson v. Metz, 609 F.2d 1052, 1057 (2d Cir.1979)). See also Franklin, 811 F.2d at 323 (state courts were not apprised of constitutional claim where appellant asserted that he was denied his fair trial right in state court but relied exclusively on state evidentiary law). Smith's vague references to his fair trial right do not call a specific constitutional right to mind.
 
 
 14
 Third, Smith's mention of a due process violation before the Ohio Supreme Court did not fairly present his due process claim because this reference did not "adequately apprise the state courts of the constitutional theory to be relied upon at appellate review." Franklin, 811 F.2d at 326. The "mere statement that 'due process' rights have been violated does not necessarily give rise to a specific federal constitutional claim." Petrucelli v. Coombe, 735 F.2d 684, 688 (2d Cir.1984).
 
 
 15
 Fourth, Smith did not fairly present his due process claim by citing the Ohio Supreme Court to "numerous federal court opinions," including Thompson v. United States, 546 A.2d 414 (D.C.App.1988). To begin with, Thompson is not a "federal case" but is a District of Columbia Court of Appeals case applying District of Columbia evidence law. Thompson employs no constitutional analysis, does not refer to due process, is not pertinent to Smith's due process claim, and was not cited for a constitutional proposition. Smith also relied on certain federal cases to bolster his state law argument; yet this reliance likewise did not fairly present his constitutional due process claim.[1]
 
 
 16
 In sum, Smith did not fairly present his due process claim to the Ohio courts. Furthermore, this court's refusal to consider the claim will not result in a " 'fundamental miscarriage of justice.' " Coleman v. Thompson, 111 S.Ct. 2546, 2565 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 495 (1986)). On the contrary, the Ohio Supreme Court deemed the "other acts" evidence at issue here admissible to prove Smith's intent and identity as a perpetrator. State v. Smith, 551 N.E.2d 190, 195 (Ohio 1990). Thus, under that court's interpretation of Ohio evidence law, to which this court must defer, Allen v. Morris, 845 F.2d 610, 614 (6th Cir.1988), cert. denied, 488 U.S. 1011 (1989), Smith was convicted on the basis of admissible evidence. In short, there is no indication that a fundamental miscarriage of justice occurred, the use of "other acts" evidence did not violate the Constitution, and Smith's procedural default cannot be excused.
 
 
 17
 2. Smith's right of confrontation was not violated when Jolly's testimony was read at the trial for Wright's murder.
 
 
 18
 Smith next claims that his right of confrontation was violated when transcribed portions of Deputy Coroner Jolly's testimony in the Tittle case were introduced at the trial for Wright's murder. As the basis for this claim, Smith asserts that Jolly was not unavailable at the Wright trial. Under Ohio R.Evid. 804(A)(5), the prosecution is required to demonstrate a witness's unavailability by making " 'reasonable efforts in good faith to secure [the witness's] presence at trial' " before evidence of the kind at issue here will be admitted. Smith, 551 N.E.2d at 197 (quoting State v. Keairns, 460 N.E.2d 245, 248 (Ohio 1984)). However, the Ohio Supreme Court found that Jolly was unavailable, Smith, 551 N.E.2d at 197, and thus affirmed the admission of Jolly's transcribed testimony. This court is bound by the Ohio Supreme Court's finding in this regard. 28 U.S.C. § 2254(d); Allen, 845 F.2d at 614.
 
 
 19
 3. Smith was not denied due process when the trial court refused to allow Dawson's testimony.
 
 
 20
 Smith next claims that he was denied due process when the trial court excluded the testimony of defense witness Dan Dawson, on the ground that Dawson violated an order proscribing his presence in the courtroom during trial. The trial judge had discretion to exclude Dawson's testimony. See Robinson v. Tennessee, 474 F.2d 1273, 1273 (6th Cir.), cert. denied, 414 U.S. 848 (1973); Stone v. Wingo, 416 F.2d 857, 867 (6th Cir.1969). Furthermore, Smith was not deprived of his constitutional rights. See Robinson, 474 F.2d at 1273. Finally, Dawson was not present at the scene of the alleged homicide and, at most, could only have shown that Tittle had overdosed on an unidentified drug more than a year-and-a-half before his death. See Id. (Exclusion of the testimony of a witness who "violat[ed] ... a sequestration order ... did not represent any deprivation of the appellants' constitutional rights.... [T]he witness was not an eyewitness to the killing and ... his testimony would have been of little if any help to appellants.")
 
 
 21
 4. Smith was not denied due process when the trial court allowed the introduction of evidence relating to an alleged bribe attempt.
 
 
 22
 Finally, Smith argues that he was denied due process when prosecution witness Edward Marino testified that he was offered $250.00 as an inducement for changing his testimony against Smith. The Ohio Supreme Court found that admission of this evidence was improper, since Smith was not connected to the bribe attempt. Smith, 551 N.E.2d at 196. However, that court also determined that the trial court's error was harmless. The Ohio Supreme Court's interpretation of its rules of evidence is entitled to deference on federal habeas review. Allen, 845 F.2d at 614. Thus, the issue is whether the Ohio Supreme Court's interpretation and application of Ohio evidence law violated Smith's Fourteenth Amendment due process rights. See id. at 615. Viewed in the context of the entire record, the trial court's error in admitting the evidence was not of "constitutional proportion" and did not infringe "the substantial rights of the petitioner as secured by the Fourteenth Amendment." Payne v. Janasz, 711 F.2d 1305, 1310 (6th Cir.), cert. denied, 464 U.S. 1019 (1983).
 
 Conclusion
 
 23
 None of Smith's assertions of error withstand scrutiny. Therefore, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Even if Thompson or another of the cases cited by Smith used a pertinent constitutional due process argument, Smith would not have exhausted his state remedies. State remedies are not exhausted "merely because one case with a vaguely constitutional analysis is buried amid a multitude of cases ... that use state law or common law analysis." Petrucelli, 735 F.2d at 689