**UNITED STATES of America**

**v.**

**John M. POINDEXTER, Oliver L. North, Richard V. Secord, Albert Hakim.**

**Crim. No. 88–0080.**

United States District Court, District of Columbia.

June 22, 1988.

Lawrence E. Walsh, Independent Counsel, Herbert Stern, Special Counsel, for U.S.

Richard W. Beckler, Washington, D.C., for defendant Poindexter.

Brendan V. Sullivan, Jr., Barry Simon, Washington, D.C., for defendant North.

Thomas C. Green, Washington, D.C., for defendant Secord.

F. Richard Janis, Washington, D.C., for defendant Hakim.

## MEMORANDUM AND PRELIMINARY ORDER RE CIPA

GESELL, District Judge.

The Court has before it the joint motion of the four defendants entitled Motion of Defendants for a Declaration that Section 5 of the Classified Information Procedures Act, and the Protective Order Entered April 15, 1988, Are Unconstitutional (Defendants' Joint Pretrial Motion No. 4). The motion has been fully briefed and argued.

### Introduction

The Classified Information Procedures Act ("CIPA"), 18 U.S.C.App. IV, was designed to provide a mechanism in criminal cases that might involve disclosure of classified information by a defendant which would provide the Government sufficient information at an early stage to decide whether or not the possible harm to national security created by a defendant's need to disclose classified information outweighs the benefit to the public interest which is derived from prosecution of criminal charges. To this end, Congress established a series of primarily pretrial procedures to enable a trial judge to rule on the use, relevance or admissibility of the classified information requested by a defendant before any public disclosure during trial or pretrial proceedings.

Although prior decisions in other Circuits have upheld the constitutionality of CIPA,[1] this motion focuses on the constitutionality of the Act, particularly Section 5, as it applies to this unusual case. Here, serious issues arise because, unlike cases to date, the events covered by the indictment, much of the conduct of the participants—defendants and witnesses alike—and many of the intelligence methods and sources they employed are highly classified. In these circumstances a defendant seeking to use classified documents at the trial is required under a literal application of CIPA to reveal his defense before the trial starts and is confronted with other related obstacles and disadvantages. This is made apparent by a brief exposition of the provisions of the statute.

### CIPA

Under CIPA, the classified information defendant reasonably expects to present or elicit from witnesses during trial proceedings in open court must go through a three-step process before it may be disclosed. First, the defendant is required to notify the Government and the court in writing of any classified information he reasonably expects to present or elicit from witnesses in pretrial or trial proceedings held in open court. Following such notice, the Government may move for a hearing before the Court on the admissibility of the classified information at issue. Once the Court determines the use, relevance or admissibility of the classified information, it then must decide whether the information will be fully disclosed in open court or whether it is appropriate for the information to be presented in an alternative substituted or redacted form. The CIPA provisions detailing these three steps are discussed below.

1. See United States v. Wilson, 750 F.2d 7, 9–10 (2d Cir.1984), cert. denied, 479 U.S. 839, 107 S.Ct. 143, 93 L.Ed.2d 85 (1986); United States v. Wilson, 721 F.2d 967, 976 (4th Cir.1983); United States v. Jolliff, 548 F.Supp. 229, 231 (D.Md. 1981). See also United States v. Collins, 720 F.2d 1195, 1200 (11th Cir.1983).

Section 5(a) of CIPA provides in relevant part:

> If a defendant reasonably expects to disclose or to cause the disclosure of classified information in any manner in connection with any trial or pretrial proceeding involving the criminal prosecution of such defendant, the defendant shall, within the time specified by the court or, where no time is specified, within thirty days prior to trial, notify the attorney for the United States and the court in writing.

This section further specifies that the defendant's notice is to "include a brief description of the classified information" the defendant expects to present or elicit from witnesses. Until a specific item of classified information is properly noticed, defendants are prohibited from disclosing that information during trial or pretrial proceedings. In addition, Section 5(b) authorizes the Court to preclude the defendant from disclosing any classified material "not made the subject of notification" and to prohibit the defendant from "examin[ing] ... any witness with respect to any such information."

Section 6 establishes proceedings for the determination by the court of the admissibility of classified information noticed by the defendant. It provides that the government may request a hearing on "all determinations concerning the use, relevance or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." CIPA § 6(a). The hearing is to be held publicly unless the government certifies that classified information will be compromised and an *in camera* hearing is necessary. This section effects only the timing of determinations of use, relevance or admissibility by the court; the evidentiary standards for admissibility remain those currently applicable to all criminal cases.

Prior to the hearing, the government is required under Section 6(b) to identify for the defendant the classified information that will be at issue. Such notice to the defendant requires specific identification of the classified information at issue if the

government has already made the information available to the defendant. Otherwise, the government may provide the defendant with a generic categorization of the information when approved by the court. Further, whenever the government requests a Section 6 hearing, upon request of the defendant the Court may order the government "to provide the defendant, prior to trial, such details as to the portion of the indictment or information at issue in the hearing as are needed to give the defendant fair notice to prepare for the hearing." *Id.* § 6(b)(2).

If the government's motion for a hearing has been timely filed prior to the pretrial or trial proceeding, the court must make its rulings on admissibility before the proceeding commences. *Id.* § 6(a). The Court is to set forth in writing the basis for its determinations as to each classified item reviewed. *Id.* If following an *in camera* hearing the Court deems classified information at issue to be inadmissible, the *in camera* record is to be sealed in the event of a post-trial appeal by the defendant. *Id.* § 6(d). The defendant, in addition, may seek reconsideration of the court's ruling at any time before or during trial. *Id.*

Whenever the court authorizes disclosure of specific classified information by the defendant at trial, the government may move for the court to order "the substitution for such classified information of a statement admitting relevant facts that the specific classified information would tend to prove" or "the substitution for such classified information of a summary of the specific classified information." *Id.* § 6(c)(1)(A)–(B). The government's motion for alternative disclosure of admissible classified information will be granted by the court only if it finds that "the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." *Id.* In connection with the motion for alternative disclosure, the government may submit to the court an affidavit by the Attorney General certifying that disclosure of the information would damage national security and

identifying the basis for the information's classification. *Id.* § 6(c)(2).

If the court denies a motion by the government for alternative disclosure of classified information, the government may file an affidavit by the Attorney General objecting to the disclosure of the information at issue. *Id.* § 6(e)(1). Upon receipt of such an affidavit, the court is to order the defendant not to "disclose or cause the disclosure of such information." *Id.* Section 6(e) then sets forth suggested, but not exclusive, remedial measures the court might impose to ensure the defendant's ability to fully present his defense. Whenever the defendant is prevented by Section 6(e)(1) from disclosing or eliciting from witnesses classified information, the court shall dismiss the indictment unless it determines that other remedial measures should be taken in the interests of justice. *Id.* § 6(e)(2). Such remedial measures may include orders dismissing specific counts of the indictment, finding against the government on any issue to which the excluded information relates, or striking or precluding all or part of a witness' testimony. *Id.* § 6(e)(2)(A)–(C). Remedial measures are not to take effect, however, until the government has had both an opportunity for interlocutory appeal, as provided by Section 7, and, thereafter, an opportunity to withdraw its objection to the disclosure of the classified information at issue. *Id.* § 6(e)(2).

## Comment

This brief recital of the convoluted procedures contemplated under CIPA is sufficient alone to demonstrate that strict application of the statute to this proceeding would not only be difficult, but impossible to accomplish consistent with a fair and expeditious resolution of this case. A few facts already established in the existing pretrial record make this conclusion immediately apparent. Some of the witnesses and defendants, particularly defendant North, operated from secure locations in the White House with full access to the most sensitive information and most critical national security intelligence methods and sources available to the government. This information, and even some methods and sources, are inextricably enmeshed in the events challenged by the indictment. Approximately 50,000 pages of "core" documents so designated by the prosecution as being of possible relevance and materiality are being made available to defendants *in camera*, and the bulk still remain classified in whole or in part.[2] Other documents presenting classification problems are still forthcoming under the Court's broad discovery Order. Two defendants, Poindexter and North, sought generalized unlimited further disclosures which would have involved the search of millions of extremely sensitive documents over an extended period of many, many months.[3] Some of the agency witnesses to be called at trial hold high positions in the government, deal daily with classified information, and were involved in cooperative intelligence arrangements between this country and its allies, arrangements which were activated to aid authorized initiatives mentioned in the indictment. Throughout the documents, individuals still in covert status are mentioned and a few may be witnesses. Moreover, as far as the record discloses, there was no advance consideration by the Attorney General as to how his request for an Independent Counsel grand jury investigation of Oliver North and others might affect national security if indictments were eventually returned. Accordingly, much of the testimony and exhibits used in the grand jury proceedings was originally classified and portions remain in this status.

It will be impossible to conduct this case under the precise strictures of CIPA, not only because of this broad intrusion into classified areas of information but also because it is impossible in advance to determine and correctly rule on all issues of relevance, materiality and admissibility. It probably was never contemplated that clas-

---

2. The prosecution has even been unwilling to disclose, *in camera*, certain materials to all of the defendants during informal discovery.

3. This motion was denied and reconsideration is also denied.

sified information problems of this magnitude would be presented to a trial judge in a single case. Nor was CIPA primarily designed for a case where a defendant was the author or recipient of much of the classified data and had not himself been charged with making unauthorized disclosures of the information.

■ Fortunately, Congress was alert to the fact that special cases might create special problems. It made clear that in any case involving classified information the defendant should not stand in a worse position because of such information than he would have if there were no such statutory procedures. 1980 U.S.Code Cong. & Admin.News 4294, 4302. To this end, Congress commented that it expected the trial judge "to fashion creative and fair solutions" for classified information problems. *Id.* at 4301. At the same time, it emphasized that the Court should not undertake to balance the national security interests of the government against the rights of the defendant but rather that in the end remedies and sanctions against the government must be designed to make the defendant whole again. *Id.* at 4303. Thus while a limited opportunity for creative judicial adjustment of CIPA procedures exists, in the end, defendant's constitutional rights must control.

While afforded this leeway, the Court is unable to determine definitely at this stage whether or not the classified document problems presented by this case can be resolved. It proposes to make the effort but the complexity of the situation defies obvious answers. Final ruling on the motion must await further developments.

It will aid discussion to focus on defendant North, the first defendant who will be tried. At this point, after several weeks of vigorous pretrial activity, Independent Counsel has already submitted the documents he intends to offer when presenting his case-in-chief. This submission is somewhat incomplete and defendant North's objections have not been heard. These materials are contained in six boxes of unclassified and now fully declassified documents and four boxes of documents with proposed redactions or substitutions for portions of classified information. The classified information has been disclosed to defendant North under seal, together with the proposed substitutes designed to safeguard aspects of special national security concern. Accordingly, the nature of the confidential material in these documents is fully known to defendant North because the full text has been supplied and apparently will continue to be supplied to him and his counsel, *in camera.* Discovery is scheduled to end July 1, 1988.

Thus, the case is now in a posture where defendant North [4] must soon invoke section 5 under CIPA and notice Independent Counsel of any classified portions of the papers in the discovery materials or particular, clearly identified documents otherwise known to him which he believes are required for his defense. North must also separately comment on redactions and substitutions in the government's case-in-chief at a date to be set. Counsel for North, by reason of his client's past employment and prior proceedings in the Iran-contra matter, is well aware of classified procedures and the events in issue and thus is unusually qualified to provide a precise, highly particularized notice.

■ The Court must recognize that there remain procedural aspects of particular concern to each of the defendants and particularly defendant North. Counsel for North has urged that strict application of CIPA will force North to reveal to the government well in advance his strategy, his evidence, and, indeed, even aspects of his defense. He suggests this will include the following: the testimony of defense witnesses; the reasons for requesting classified documents he plans to introduce at trial; the classified information he expects to elicit from prosecution government witnesses by cross-examination; and the contents of defense counsel's questions, to the extent they may reasonably be expected to elicit classified information. Counsel urges that North's own proposed testimony must

---

4. Notices from other defendants not now scheduled for trial can be deferred.

be disclosed well before he has even decided whether or not to take the stand, and that the opening and closing statements of counsel must be reviewed in advance. This, it is argued with considerable force, will place North at a practical and tactical disadvantage, infringing upon his constitutional rights under the Fifth and Sixth Amendments. These considerations lie at the heart of defendants' constitutional challenge. The Court has determined that many of these concerns can hopefully be avoided by applying pretrial procedures consistent with the congressional intent underlying CIPA. A way must be found to preserve defendant's constitutional rights that still affords adequate protection for national security concerns.

Accordingly, the Court:

(1) Directs defendant North to file his Section 5 notice by July 11, 1988. The notice may be later supplemented as to documents not received by that date in legible form or by delay in fulfilling the Court's discovery Order. The notice shall satisfy the standard for specificity of notice set out in *United States v. Collins*, 720 F.2d 1195, 1199 (11th Cir.1983), and shall cover the documents or other information possessed by North that contains classified information he reasonably expects to disclose in any manner during trial. The notice may be accompanied by a precise demand for other classified materials revealed by the formal and informal discovery and a particularized and clearly identifiable demand for separate documents known to defendant that he requires for his defense. The undifferentiated discovery already rejected by the Court shall not be reinstituted in the guise of such a demand.

(2) The Court will hear counsel for defendant North at what may prove to be more than a single *in camera, ex parte* oral presentation commencing on July 14, 1988, at 9:30 a.m., for the sole the purpose of being informed, without disclosure to Independent Counsel, of the reasons why he and his counsel consider the specific items of classified information he is seeking under (1), above, to be required as relevant and material to his defense.[5] During this hearing process the Court may explore alternative means of providing the classified data desired by North in nonclassified form, or in an alternative overall narrative presenting defendant's factual version of his defense or a substantial segment of same in the form of stipulations.

(3) Thereafter, the Court will rule as to the relevance and materiality of items so noticed as promptly as possible, but without revealing defense strategy. Its decisions will be sent directly to the interagency declassification group. When appropriate, a ruling on an item may have to be deferred pending developments at trial. The Court reserves the right to consult the interagency declassification group informally about the content of a particular document. Independent Counsel shall not be informed of any such consultation.

(4) After the Court rules on the classified materials so noticed, the interagency declassification group will then review whether any further classified information can be released as the rulings may require and so advise the Court and Independent Counsel. Independent Counsel will then be provided the opportunity to seek redaction or substitution under Section 6(c) of CIPA. Thereafter, the Court will consider what further steps are necessary in the light of what has developed.

In outlining the various steps still necessary before trial, the volume of documents requires that processing at the Section 5 stage and the subsequent reference of rulings to the interagency declassification

---

5. The hearings, in any event, will be held *in camera* because the Court has determined in its discretion that closure is essential to protect classified materials that are not relevant and material to the issues, that because of the highly sensitive nature of some of these materials the governmental interest in their protection is compelling and that there is no reasonable lawful alternative available for the fair and impartial administration of justice consistent with the Constitution in this limited instance. *See Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).

group must proceed intermittently as documents are noticed while other documents remain to be identified for notice or await ruling. The Court will expect completion of the process to the Section 6(c) stage before August 1, 1988.

(5) The Court will at no time review in advance defense counsel's opening statement, proposed defense questions or the subject matter to be covered by defense witnesses. It contemplates only that counsel for North will proceed at all times within the scope allowed by the Court's rulings on the notices, that counsel will so advise defense witnesses, and that the Court will be advised sufficiently in advance if unexpected developments during trial indicate to defense counsel a pressing need to proceed beyond these strictures so that further court ruling can be obtained.

(6) There will be no review of defendant North's testimony in advance. When and if he is about to testify, his counsel will advise the Court if it then appears the testimony will involve classified national security disclosures beyond those then authorized under prior rulings of the Court and, again, a specific further ruling will be obtained.

This procedure preserves the essential protections of CIPA but in a manner that does not impair defendant's rights. There is no reason to believe that Mr. Sullivan, defendant North's highly professional, experienced counsel will knowingly abuse the Court's willingness to allow the case to proceed without the excessive judicial supervision that CIPA might require under different circumstances.

(7) There is no present need to alter the Court's Protective Order.

One final matter touching on CIPA is presented by a separate series of briefs directed to the nature of Independent Counsel's CIPA authority. He is, in the Court's view, responsible for the investigation and prosecution of this case under each of his dual appointments. He has advised the Court that he will proceed with deference to the Executive's national security concerns as expressed to him through the interagency declassification group with which he has closely collaborated.

This question of where ultimate authority rests under CIPA as between the Attorney General and Independent Counsel under various circumstance that may arise from this point on under Section 6(c) or otherwise is not ripe for decision. Common sense suggests the Attorney General should immediately appoint a statutory designee under CIPA for all purposes so that his designee can be informed of any serious national security concerns, if and when they arise, both by the Justice Department's representative on the interagency declassification group and by Independent Counsel. This would assure a prompt, informed mutual decision by the Attorney General and Independent Counsel should any major issue concerning disclosure of classified material arise at any future stage of this case and minimize delay.

### Conclusion

The defendants' joint motion to declare the provisions of CIPA, particularly as applied to this case, and the Court's Protective Order unconstitutional is denied, without prejudice to await further developments, and the Court declines to rule on the status of Independent Counsel under that Act at this time for lack of ripeness, awaiting the Attorney General's possible appointment of a designee under that statute.

SO ORDERED.