**UNITED STATES of America**

v.

**Oliver L. NORTH.**

**Crim. No. 88–0080–02.**

United States District Court, District of Columbia.

Dec. 12, 1988.

CIPA & 5 PRECLUSION

MEMORANDUM AND ORDER

GESELL, District Judge.

North's counsel, for the second time, has failed to comply with a written Order of this Court directing North to file a notice pursuant to Section 5 of the Classified Information Procedures Act ("CIPA") particularizing his need to have available for public use at trial such classified document material obtained from the government that North considers relevant and material for his defense. As a consequence, Independent Counsel, on behalf of the government, has moved to deprive North of any use of such classified information due to his continued refusal to comply with the Court's pretrial Orders governing this aspect of the trial. Before ruling on this preclusion motion, which has been fully briefed, it is necessary to review the circumstances under which counsel's recalcitrance has occurred.

The indictment was returned March 16, 1988. From the very outset of the extensive pretrial proceedings which have since occurred, the Court and counsel on both sides have recognized two major difficulties that needed definitive resolution before the case could proceed to trial: first, obstacles that might have been created due to congressional awards of use immunity preindictment to three of the four defendants [1] and, second, obstacles presented by the obvious fact that many documents relating to issues in the case were classified and withheld from public disclosure in the interests of national security. The present motion comes near the culmination of this Court's efforts to resolve these second obstacles by implementing CIPA so that relevant and

1. For resolution of these issues, *see Memorandum and Order,* filed June 16, 1988, 698 F.Supp. 300.

material information in previously classified documents reasonably required for trial can be made available in appropriate form.

Among other things, CIPA sets out the conditions under which a defendant can have access to and use classified material at trial. It implicitly assures a defendant that relevant and material classified information required for his defense may not be withheld provided certain statutory procedures are followed. As early as April 29, 1988, all defendants filed a joint motion seeking a declaration that CIPA is unconstitutional[2] both on its face and, more specifically, as applied in this case because its processes would allegedly deprive defendants, including North, of a fair trial as guaranteed by the Constitution.

In its preliminary consideration of this motion, the Court resolved a number of North's objections by interpreting CIPA in a manner consistent with congressional assurances that the statute should be broadly interpreted in the interests of a fair trial.[3] Thus, the Court refused (1) to monitor opening statements or closing statements of defense counsel in advance, and (2) to subject North's own testimony or that of witnesses he may call to scrutiny in advance. The Court also recognized the need to preserve some flexibility when applying the statute so that unexpected developments would not foreclose a proper defense, and it emphasized its desire to afford each defendant full access to relevant and material classified papers, stating,

> [S]trict application of the statute to this proceeding would not only be difficult, but impossible to accomplish consistent with a fair and expeditious resolution of this case.... Some of the witnesses and defendants, particularly defendant North, operated from secure locations in the White House with full access to the most sensitive information and most critical national security intelligence methods and sources available to the government. This information, and even some methods and sources, are inextricably en-

meshed in the events challenged by the indictment. Approximately 50,000 pages of "core" documents so designated by the prosecution as being of possible relevance and materiality are being made available to the defendants *in camera,* and the bulk still remain classified in whole or in part. (Footnote omitted.) Other documents presenting classification problems are still forthcoming under the Court's broad discovery Order....
*Id.,* at 7.

> ... [Congress] emphasized that the Court should not undertake to balance the national security interests of the government against the rights of the defendant but rather that in the end remedies and sanctions against the government must be designed to make the defendant whole again. (Citation omitted.) Thus while a limited opportunity for creative judicial adjustment of CIPA procedures exists, in the end, defendant's constitutional rights must control. *Id.,* at 9.

> The Court has determined that many of these [North's] concerns can hopefully be avoided by applying pretrial procedures consistent with the congressional intent underlying CIPA. A way must be found to preserve defendant's constitutional rights that still affords adequate protection for national security concerns. *Id.,* at 11–12.

In April, The Court recognized that it would be impossible to determine then how application of CIPA to the classified documentary materials might or might not create constitutional obstacles to fair trial. Accordingly, it left open final resolution of the motion until the process outlined by Sections 5 and 6 of CIPA had run its course. Obviously a degree of cooperation and responsible lawyering was contemplated.

Thereafter, on many different occasions, the Court sought to facilitate an on-going declassification process and to encourage the fullest disclosure to North of pertinent

---

**2.** Defendants' Joint Pretrial Motion No. 4.

**3.** *Memorandum and Preliminary Order re CIPA,* filed June 22, 1988, 698 F.Supp. 316.

papers in full text.[4] Indeed, the focus of the pretrial efforts has for several months increasingly centered primarily on classified documents. Independent Counsel provided North with the documents he intended to introduce at trial in the case-in-chief, noting certain redactions. In addition, Independent Counsel turned over to North thousands of other documents developed during Independent Counsel's inquiry. North was also advised of the witnesses Independent Counsel intended to call at the trial. A committee representing Executive agencies[5] charged with responsibility to declassify relevant materials worked energetically, almost around the clock, and released increasing amounts of text from classification restrictions.

The fullest disclosure to North was encouraged. North was placed in a unique position not required by CIPA and perhaps never so generously awarded any federal criminal defendant faced with a need to use classified documents at trial. North in almost every instance was provided the full language and text of the classified documents, including the portions still deemed classified. Unlike defendants and their attorneys in other cases, he has not been in the position of guessing the content of material withheld by classification. He knows in actual text what the government is seeking to maintain classified. Thus, he has been fully equipped to decide, along with his counsel, whether or not detail in still classified papers or redacted portions are relevant and material for his defense.

This massive, generous pretrial disclosure has from the outset been designed to expedite CIPA procedures and assure a fair trial. North has been aware from the outset that he would be required to designate from this mass of papers the papers he considers relevant and material to his defense and needed for his defense at trial.

When his counsel indicated that North desired papers in addition to what had been provided voluntarily or otherwise by Independent Counsel, the Court took a rare step, with the consent of Independent Counsel. On July 6, 1988, the Court heard North and his counsel at an *ex parte, in camera* hearing where aspects of North's defense were revealed. As a result of that proceeding, without giving Independent Counsel even an opportunity to be heard, the Court ordered extensive discovery on July 8, 1988. This discovery was carried out with considerable and perhaps unprecedented expenditure of time and resources to meet North's discovery demands.[6]

North's counsel has had prior experience with the operations of CIPA[7] and is fully acquainted with its requirements and its legislative history. Because of his long involvement with the defendant, starting well before the indictment, he was undoubtedly acquainted with the most intimate details of North's defense for many months. Thus, there was no doubt in the Court's mind that he was aware that efforts to distort CIPA by "graymail"[8] would not be permitted. Congress and other courts have condemned this defense tactic, and counsel was required as an officer of the Court to proceed in good faith. The Court noted its expectations as early as the first major CIPA Order, stating: "Counsel for North, by reason of his client's past employment and prior proceedings in the Iran-contra matter, is well aware of classified procedures and the events in issue and

---

4. *See, e.g., Protective Order,* filed April 15, 1988; Pretrial Hearing, May 6, 1988 [1988 WL 148597]; Transcripts, June 6 and June 23, 1988; *Order,* filed June 24, 1988 [1988 WL 148530]; *Further Memorandum and Order Re CIPA and Trial Schedule,* filed July 8, 1988, 698 F.Supp. 322; *Order,* filed July 13, 1988 [1988 WL 148526].

5. These include National Security Council, State Department, Department of Defense, Central Intelligence Agency and Department of Justice.

6. The decision to order this discovery was not, of course, a final decision that each document released under the discovery Order would prove to be relevant and material.

7. *See, e.g., United States v. Zettl,* 835 F.2d 1059 (4th Cir.1987).

8. Graymail is the attempt to forestall prosecution of criminal offenses by threatening to release classified information which would compromise national security, without being able to demonstrate relevance and materiality.

thus is unusually qualified to provide a precise, highly particularized notice." (*Memorandum and Preliminary Order Re CIPA*, filed June 22, 1988, 698 F.Supp. at 320).

The Court recognized that the time would come when it would be required in a series of *in camera* hearings to make determinations as to relevance and materiality of classified information North would notice under CIPA § 5, which states in part:

**(b) Failure to comply**

If the defendant fails to comply with the requirements of subsection (a) the court may preclude disclosure of any classified information not made the subject of notification and may prohibit the examination by the defendant of any witness with respect to any such information.

With statutory requirements in mind, the Court repeatedly indicated to counsel and ultimately issued Orders requiring North's CIPA § 5 notice to be limited to classified portions that North considered relevant and material to his defense. The statute's text makes relevance and materiality a threshold matter for the defense: Section 5 opens by providing for notice of documents *defendant reasonably expects* to disclose or cause to be disclosed at trial. This of course is common sense: the Court need not waste its time reviewing whether a document should be released, if the defendant does not reasonably expect to use it at trial because it is relevant and material to his case.

Some redactions were, of course, presumptively immune from disclosure. It was repeatedly indicated in the course of pretrial that redactions designed purely to protect code or filing symbols or which might endanger the life of an undercover agent or government representative would be protected. The Court also suggested that perhaps some system could be worked out to preserve the anonymity of certain officials of foreign governments whose activities or representations might be pertinent, but subject to criticism in their own countries.[9]

In order to begin what appeared might be a laborious process at best, the Court on June 22, 1988, issued an Order directing North to file a CIPA § 5 notice by July 11, 1988 for government documents he then had in his possession, which could be supplemented later as pretrial proceedings and discovery progressed. After the July 6, *ex parte, in camera* hearing with North regarding his discovery requests, the Court delayed the July 11 filing and ordered that North file, by August 1, 1988, a CIPA § 5 notice listing all the documents he required for his defense which he had received from the government from prior discovery or otherwise, and listing all his objections to classified redactions in the government's case-in-chief documents. The Order read, in part, as follows:

(1) North shall, by August 1, 1988, designate in the form of a CIPA § 5 notice those redactions made in documents in the government's case-in-chief he requires to support his defense.

(6) North shall, by August 1, 1988, notify the government pursuant to Section 5 of CIPA of any other classified document then in its possession he proposes to present in his defense at trial. This notice shall include all items selected under (1) above.

(7) North shall, on or before August 5, 1988, notify the government pursuant to Section 5 of CIPA of each classified document obtained under this Order he proposes to present in his defense at trial.

. . . . .

(8) Independent Counsel shall, by August 1, 1988, also relate each document in its case-in-chief to the specific count or counts naming North—other than the

9. When such materials were in the nature of background, such as efforts to release the hostages, the Court urged that a non-classified narrative account be developed by North, which could be stipulated. North rejected this, although it was acceptable in principle to Independent Counsel. This attitude was again reflected when North refused, at the Court's suggestion, to develop an agreed marking system for the papers that would facilitate a CIPA § 6 hearing.

first three counts—for which the document will be offered as proof.[10]

On July 20, Defendant moved for a continuance of all pending dates. When the Court refused to extend the dates, North purported to file his August 1 CIPA § 5 notice. Promptly after this filing, Independent Counsel, by motion dated August 3, 1988, vigorously urged that North should be required to file forthwith a more particularized notice, or should be precluded from disclosing classified information at trial, stating in part:

Defendant's CIPA § 5 notice is not, in any real sense, a CIPA § 5 notice at all. This telephone book-sized submission is merely the latest move in defendant's struggle to have this trial postponed and to subvert the procedures of this Court.

Defendant has the candor to admit that he has not complied with CIPA § 5 by notifying the Government and the Court of the classified documents he "reasonably expects" to disclose during the course of his trial.

. . . . .

... Defendant's primary document, an Index that is 265 single-spaced pages long, sets forth (by identification number, delivery date and Government description) virtually every classified document that the Government has produced in the course of discovery.

. . . .

... Given defendant's arrogant disregard for the Court's July 8 Order—and his well-demonstrated strategy of attempting to delay the trial of this case at any cost—the more appropriate response would be an exercise of the Court's evidence preclusion powers under CIPA.[11]

. . .

The Court ultimately denied this motion. However, while the motion was pending the Court tested North's notice against some of the documents noticed and concluded that the filing was obviously submitted in bad faith. The Court rejected it on August 5, 1988, but gave North and his counsel another chance to submit a proper notice, warning that further improper notices would be subject to preclusion of the underlying documents at trial. The Court stated:

North's CIPA § 5 notices scheduled for hearing August 8, 1988 are stricken as wholly insufficient, but without prejudice if an appropriate filing is made on November 14, 1988. This filing will be subject to preclusion if necessary particularization is again omitted and shall cover North's entire § 5 notices directed to all aspects of his case. (Order of August 5, 1988.)

After being requested by North on October 11, 1988 to give its reasons for precluding the first notice, the Court repeated the requirements for a CIPA notice and explained the first rejection as follows:

It was rejected because it blatantly lacked any attempt at particularization and disregarded relevance and materiality completely. By objecting to redactions of materials having absolutely nothing to do with the case, it ignored the safety of individuals and vital national security concerns. As such, it could not possibly serve any purpose other than obfuscation and delay.[12]

In another motion dated October 11, (the deadline for other pretrial motions) North

---

**10.** *Further Memorandum and Order Re CIPA and Trial Schedule,* filed July 8, 1988. In the *Scheduling Order for Hearings on Classified Materials,* filed July 13, 1988, the Court reiterated in narrative form what it expected North to file. The Court once again emphasized that the CIPA § 5 notice was to indicate "any information redacted from the government's case-in-chief *which he requires to support his defense,* and other documents then in his possession *which he intends to present at trial."* The Order indicated that the Court "will expect defendant to show why substitutions proposed will conceal facts required by the defense."

**11.** *Government's Motion to Strike Defendant's Second CIPA § 5 Notice, and to Compel the Defendant to File Forthwith More Particularized CIPA § 5 Notice or, In the Alternative, to Preclude Defendant From Disclosing Classified Information at Trial,* and Memorandum in Support thereof, filed August 3, 1988.

**12.** *Order Providing Clarification as Requested in North Motion No. 57,* filed October 19, 1988.

again moved to continue the date for his CIPA filing. This motion was denied by Order dated October 21, 1988:

> ORDERED that defendant's motion (# 56) for continuance of the date on which the defense must file his CIPA § 5 notice is denied. The Court will resolve the issues raised by the notice, document-by-document, at continuous oral hearings to be promptly scheduled following November 14, 1988. Defendant will be required to attend. The hearings shall be *in camera* since they will be limited to discussion of classified materials which defendant requires for use at trial. Defense counsel shall indicate on November 14, 1988 his best estimate of the number of full court days this will require.

In a third motion dated October 11, the North also sought delay by requesting that the Independent Counsel provide notice pursuant to Section 6(b)(2) of CIPA twenty days in advance of North's CIPA § 5 filing. By Order dated October 31, 1988, the Court reiterated that it would not delay the November 14 deadline for North's filing. The Court reviewed the structure of CIPA again, highlighting that CIPA is designed to let the government know, with some precision, what the costs of prosecution would be, stating:

> The November 14, 1988 deadline for North's CIPA § 5 notice remains unchanged.
>
> Section (6)(b)(2) of CIPA requires the government to provide the defendant at a hearing certain information concerning classified materials prior to trial. It does not require such specification to precede a CIPA § 5 filing. In fact, the structure of CIPA shows that such specification can only occur *after* the government receives the CIPA § 5 notice. CIPA, and particularly its Section 5 notice provisions, was enacted in large part to inform the government of the cost that bringing a prosecution might entail in terms of divulgences of national security information. *Legislative History, P.L. 96-456, Classified Information Procedures Act,* S.Rep. No. 96-823, 96th Cong., 2d Sess., pp. 1-4, *reprinted in*

1980 U.S.Code Cong. & Admin.News 4294-4298. Tamanaha, *A Critical Review of the Classified Information Procedures Act,* 13 Am.J.Crim.L. 277, 283, 292-293 (1986). [footnote: Sections 12 and 13 of CIPA, authorizing the Attorney General to establish guidelines specifying the factors to be considered when rendering decisions regarding whether or not to prosecute a case involving disclosure of classified information and requiring reports to Congress regarding decisions not to prosecute, illustrate CIPA's concern for precisely evaluating the costs of prosecutorial discretion, both to national security and the rule of law.] Once North files his CIPA § 5 notice, the government may choose whether or not to proceed with each count, or it may choose to drop certain lines of evidence, relating, for instance, to overt acts that North would be entitled to defend using ultrasensitive information. Of course, it may also move to substitute or redact information needed for trial pursuant to § 6(c).

> ... CIPA hearings will be scheduled soon after the § 5 filing. North shall file his CIPA § 5 notice as scheduled on November 14, 1988.

On November 7, one week before the final CIPA § 5 deadline, North again sought an indefinite extension of the date for filing his CIPA § 5 notice relating to his case. The following day, the Court denied North's motion, and after reviewing the history of his dilatory moves stated that having provided North with over 100 days to prepare the CIPA filing was sufficient.

> North overlooks the history of this case. Pursuant to a prior Order of the Court North failed to file a responsible CIPA § 5 notice on August 1, 1988. The Court, on August 5, 1988, *sua sponte* struck this inadequate notice but, over objection, allowed North an additional opportunity to comply with the statute and Orders of this Court. Given these circumstances and the extraordinary liberality of the government in disclosing its witnesses, its documentary proof and

other classified materials, 101 days was more than enough time for North to prepare a responsible CIPA § 5 notice.

North then filed the purported CIPA § 5 notice on November 14, 1988, which Independent Counsel's preclusion motion challenges. The notice of objections to government case-in-chief documents filed with the CIPA § 5 notice was the same as the notice which the Court had previously rejected. The accompanying memorandum frankly stated that the Court's orders were still being ignored.[13] The notice of classified documents the defense required for use at trial and its objections to redactions in the Government's case was, for all intents and purposes, in the same form as the first rejected notice. Though it was nearly 500 pages long, it attempted to request an opportunity to file supplements for materials counsel claim they have not yet had time to examine for purposes of CIPA.

Thus the second notice reflected a deliberate disregard of the Court's Order. It seeks disclosure of masses of classified material which under no conceivable version of a defense could have any utility whatsoever. The effect of this tactic on the efficient and reasonably expeditious pretrial proceedings is immense. Confusion, delay and uncertainty result and the Court's control of the proceedings is undermined. Some strain is to be expected but the tensions resulting from this obdurate, purposeful obfuscation brought matters to the breaking point. As the Eleventh Circuit found in *United States v. Collins*, 720 F.2d 1195, 119–1200 (11th Cir.1983), in striking a defendant's proposed CIPA § 5 notice, "The court must not countenance a Section 5(a) notice which allows a defendant to cloak his intentions and leave the government subject to surprise at what may be revealed in the defense. To do so would merely require the defendant to reduce 'greymail' to writing."

While the Court's examination of a portion of the information noticed has revealed many more examples, the sealed classified materials attached to the government's motion to strike contain ample evidence of North's attempt to frustrate the prosecution. This trial does not concern the reaction of various Central American countries to congressional legislation, the life history of a potential defector, the precise distribution of Sandinista forces at a particular time among various villages, a possible terrorist attack on a businessman, the President's comments on legislative developments and any contacts from the White House with religious leaders, how information concerning the location of hostages was obtained, and the like. However, such is the nature of numerous documents noticed.

This is a case charging fraud and deceit on the United States, its Chief Executive and Congress, involving the use of arms' profits in a manner allegedly unauthorized by the President. It must remain focussed on these issues, rather than be derailed by the myriad unrelated issues which defendant's notice comprehends.

That defendant made his latest submission under the circumstances outlined above leaves the Court no choice but to apply its authority to preclude. North obviously failed to notice this information on November 14 in proper form. Other federal courts confronted with insufficient notice under CIPA § 5 have exercised preclusion authority. *United States v. Badia*, 827 F.2d 1458, 1464–1466 (11th Cir.1987). *See also, United States v. Collins*, 720 F.2d 1195 (striking vague, non-compliant CIPA notice, but permitting defendant a second chance to file a qualifying CIPA notice); *See also, United States v. Pringle*, 751 F.2d 419, 426–428 (1st Cir.1984) (no due process rights of defendants violated by precluding defendants from seeking discovery of classified documents that the

---

**13.** "[C]ontrary to the Court's implication, a CIPA § 5 notice is not meant to address 'relevance and materiality' at all; CIPA specifies that the § 5 notice is merely a *list* ... It is the Court's obligation to conduct a CIPA § 6 hearing in order to determine the relevance and materiali-

ty, item-by-item, of the classified information listed in the defendant's CIPA § 5 notice." *Supplemental First Notice of Defendant Oliver L. North Pursuant to Section 5 of the Classified Information Procedures Act*, filed November 14, 1988, at 4.

court found not relevant to the determination of guilt or innocence of the defendants).

Chief Justice Marshall's ruling, sitting as a trial judge, as early as 1807 in the *Aaron Burr* conspiracy trial is directly on point. Burr sought to subpoena papers from President Jefferson to aid his defense. Chief Justice Marshall recognized the "sacred" right of the accused to process so he could present documents and witnesses in his favor. He noted that no one, not even the President, was immune, but declared he would not issue a writ if it was apparent that Burr's application was "not really in his own defense, but for purposes which the Court ought to discountenance." He identified one such purpose as manifest disrespect for the government in referring to presidential materials not germane. Burr Trials 1, 181–88; 25 F.Cas. 30; Coombs' Trial of Aaron Burr 37, June 13, 1807.

Although always conscious of the fundamental rights of criminal defendants to present their cases, *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), courts have precluded defendants from tendering certain types of evidence or testimony, when discovery or other rules have been intentionally violated, and these preclusions have withstood constitutional attack. In *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), the Supreme Court recently upheld the trial court's preclusion of a witness whom the defense had failed to identify

pursuant to the Court's discovery order. In *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the Supreme Court upheld an order precluding the testimony of defendant's expert witness because he had refused to turn over a highly relevant report in accordance with the Court's orders. *See also, Chappee v. Vose*, 843 F.2d 25 (1st Cir.1988) (preclusion of three defense experts who were not properly noticed did not violate the Sixth Amendment).

Federal trial judges have used preclusion powers granted by the Federal Rules of Criminal Procedure when warranted. For instance, when a defendant missed three pretrial cutoff dates for designating expert witnesses, a district court in Chicago, pursuant to Rule 12.2(b) of the Federal Rules of Criminal Procedure, precluded him from introducing psychiatrists who would testify about defendant's depression during the time of the alleged mail fraud. The Seventh Circuit found in *United States v. Buchbinder*, 796 F.2d 910 (7th Cir.1986), that it was within the district court's power to preclude this testimony. Because defendant's witnesses essentially described the same substantive story that the psychiatrists would have told, though perhaps with less authority, the defendant was not deprived of the substance of his defense. Moreover, the defendant was not denied the effective assistance of counsel, despite counsel's failure to timely notice the experts.[14]

---

**14.** Similarly, in *United States v. Duggan*, 743 F.2d 59, 80–82 (2d Cir.1984), after an initial show cause hearing, a judge denied an application for leave to interpose an insanity defense after the Rule 12.2(a) deadline had passed, characterizing the defendants' submission as more in the nature of "an application for a lengthy adjournment of the trial" than "an application for leave to file notice of a defense of insanity." Two of the factors the trial judge cited in denying motions to reconsider resonate with this case: the public had an interest in the speedy disposition of the charges, which had been pending since the previous summer and the dilatory character of the pursuit of the defense. The preclusion was upheld against Fifth and Sixth Amendment challenges, in part because the defendants offered no help to the Court in showing the materiality of their requests. The Court stated,

Those rights are not unlimited; they ensure that a defendant will not be denied the opportunity to present testimony that is relevant, material, and vital to the defense. *See, United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (other citations omitted). In light of defendants' repeated failures to present more than conclusory statements that they were afflicted with PTSD [post traumatic stress disorder], and to show in what way that could relieve them of responsibility for the crimes charged, we cannot conclude that the Meehans presented an adequate basis for finding that the proposed defense was material or vital. *Id.,* at 82, 83, n. 8.

*See also, United States v. Dill*, 693 F.2d 1012, 1015 (10th Cir.1982); *United States v. Veatch*, 674 F.2d 1217, 1224–1225 (9th Cir.1981), *cert.*

The Court's preclusion powers under CIPA resemble those under the preclusion powers of the Federal Rules with respect to alibi and insanity defenses. That is, just as Subdivision (d) of Rule 12.2 confers authority on the court to exclude expert psychiatric testimony on behalf of defendants who fail to make a proper notice or to submit to an independent exam under subdivision (c), Section 5(b) of CIPA permits exclusion of testimony for failure to conform to its provisions.[15] The legislative history of CIPA shows that its drafters recognized the parallel between CIPA and the prior notice of alibi rule contained in Rule 12.1. S.Rep. No. 823, 96th Cong., 2d Sess. 9 (1980), *reprinted in*, 1980 U.S.Code Cong. & Ad.News 4294 at 4303. Courts have noted the analogy between CIPA's notice and preclusion provisions and the notice of alibi requirement of the Federal Rules. *United States v. Collins*, 720 F.2d 1195, 1200; *United States v. Wilson*, 750 F.2d 7, 10 (2d Cir.1984).[16] Due process requires "a *fair opportunity* to defend against a state's accusations," *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) (emphasis added), and North had not one, but two opportunities to have his relevant and ma-terial documents undergo CIPA scrutiny so that they could be used in his defense. He squandered part of his constitutional right to mount the fullest possible defense.[17]

Thus, the legal standard is crystal clear. North's counsel's failure to comply with the Court's pretrial order cannot be tolerated. The consequences of preclusion admittedly fall on the defendant personally, rather than on his counsel, who surely played some role in preparing the CIPA filings. However, in this case, the intimate involvement of North in the tactical decisions of the CIPA § 5 notice is apparent from the nature of the case. Only through him can counsel learn about the murky events that may underlie the simple or coded text of the documents.[18]

North's unwillingness even to pay token respect to the Court's requirement to provide detail appears to reflect his mistaken view that he is entitled to use classified materials at trial without indicating in any way the significance of that material to the prosecution and the Court. No defendant has this privilege even where unclassified material is involved. *See,* Fed.R.Evid. 401. The truth is that although well informed

*denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); *United States v. Olson*, 576 F.2d 1267, 1273 (8th Cir.1978).

**15.** Other Federal Rules also suggest that judges have the power to preclude a defendant from mounting every aspect of his or her desired defense when the defendant has not complied with the applicable rules, met the applicable standards, or made a sufficient showing of relevance or necessity. For example, Rule 16(d)(2) authorizes preclusion when the parties have not complied with reciprocal discovery provisions. Rule 17(b) makes clear that defendants do not have unlimited subpoena powers. If an indigent defendant seeks to subpoena a witness, the defendant must make an *ex parte* showing that the presence of the witness is necessary to an adequate defense, which of course necessitates some advance disclosure of the theory of defense. Rule 17(c) permits courts to modify or quash a subpoena to produce documentary evidence if it is unreasonable or oppressive.

**16.** It is instructive to compare the purposes of the notice of alibi and insanity defense rules and the purposes of CIPA. The Notes of Advisory Committee on Rules make clear that the federal notice rules seek to prevent unnecessary interruption and delay in the trial. Both rules

12.1 and 12.2 permit the government to make its investigation of the defendant's claims pretrial, rather than delay the trial. CIPA is structured both for the efficiency reasons underpinning the alibi and insanity notice rules, and also for the more important reason that the government must learn, *pretrial*, the cost of the prosecution to national security. Preclusion is clearly justified when the failure to properly notice not only causes delay—as it clearly would here—but when the defendant's conduct could also frustrate the important value of permitting the government to ascertain what national secrets will be disclosed by going to trial.

**17.** In this, North resembles the defendant in *Allen v. Morris*, 845 F.2d 610 (6th Cir.1988). In *Allen*, the defendant was precluded from introducing the transcript of a government witness's testimony because he had not made adequate independent efforts, in accord with the state rule, to locate the absent witness. The trial judge found that the failure was "a deliberate trial strategy which failed." *Id.*, at 615–616.

**18.** See Transcript April 25, 1988 at 5–7, at which the Court warned the defendants that they personally had responsibility for much of the conduct of their cases.

and duly warned, North, as a tactical matter, has taken an obdurate stand. If this tactic were permitted, there would be no trial.

CIPA contemplates a pretrial determination of the extent to which classified information will be likely to be exposed during trial. This process requires mutual disclosures and a degree of cooperation between the parties. If a party chooses to avoid the disclosures which are necessary, the Court is placed in a position where it cannot assure a fair trial or determine what the consequences of a full and fair application of the statute in this case will be.

The government's Motion to Strike is granted in part. However, the motion, as framed, is far too broad. There is no basis for the far-reaching preclusion order suggested by the government based on events arising from North's failure to file an appropriate notice on November 14, 1988. The Notice itself is rejected and North's disregard of the Court's order in this instance must be remedied.

North's counsel have been retained and he continues to be entitled to counsel of his choice. Accordingly, at this juncture there is no action the Court can appropriately take other than preclusion which will remedy the situation that has arisen from counsel's tactical disregard of the Court's orders outlined above.

Even as to this CIPA § 5 notice, a form of preclusion such as that sought by Independent Counsel would be improper because it would too severely restrict the defense. On the other hand, some form of preclusion remedy is essential so that pretrial activity may be concluded and the case brought to a jury.

The Court has just completed a document-by-document review of the documents the Government plans to introduce in its case-in-chief. These proceedings have narrowed the issues for trial and the Court has approved various categories of redactions and substitutions. (*See, Memorandum and Order Following CIPA § 6*

*Hearings*, filed December 12, 1988). In the process, the Government has withdrawn a considerable number of documents so that the portion of its documentary case-in-chief containing classified information now totals approximately 300 documents.[19]

The Court must assume, in spite of the limited information provided by the defense, that North's CIPA § 5 Notice contains some especially relevant and material papers which are particularly significant from the defendant's point of view. While North has the benefit of testimony from his witnesses, from unclassified documents and from such documents he may have which were not obtained during pretrial proceedings, fairness requires he have some opportunity to make use of especially significant papers he has obtained from the government since indictment. Accordingly, taking into account all these factors and considerations, the Court has determined that North shall be precluded from using during the trial any classified information in the documents listed in his Second Supplemental CIPA § 5 Notice of November 14, 1988, except as stated immediately below.

1. On or before January 3, 1989, North shall identify 300 documents containing classified information selected from those documents listed in his CIPA § 5 notice. This is approximately the same number of classified documents as will be used by the government in its case-in-chief.

2. On or before January 9, 1989, these documents shall be redacted or substituted in accordance with procedures and rulings applicable to the government's documents as a result of the CIPA § 6 hearings. This is to be arranged by the parties without the participation of the Court.

3. If types of classified information are included in the identified documents not considered in the CIPA § 6 hearings which the government believes should not be revealed, it should advise the Court and these items will be considered at an *in camera*

---

**19.** These developments have led North to withdraw approximately 10,000 pages from his CIPA § 5 notice.

hearing. North shall be required to identify at the hearing the relevance and materiality of each item and generalities will not be accepted. Independent Counsel has recognized his obligation to the Court and has disclosed the relation of each document to each count, the underlying theory of his claims and has assisted in identification of pseudonyms in addition to declassifying a substantial amount of classified material.

Defendant's motion claiming that CIPA is unconstitutional as applied remains under consideration until CIPA proceedings have run their course, but his motion obviously loses force where the Court's generous application of the statute is not accepted by the defendant.

SO ORDERED.