**UNITED STATES of America**

v.

**John M. POINDEXTER.**

**Crim. No. 88–0080–01 (HHG).**

United States District Court,
District of Columbia.

July 25, 1989.

Laurence E. Walsh, Washington, D.C., for U.S.

Richard Beckler, Washington, D.C., for defendant.

---

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

The government has moved to dismiss Counts Two and Three of the indictment without prejudice, and it has offered to narrow its proof under Count One. Additionally, the parties have submitted to the Court their respective proposals for a time schedule for further pretrial proceedings. All these matters are disposed of herein.

## I

### Narrowing of Conspiracy Count

Count One charges a conspiracy by defendant John Poindexter with Oliver North, Richard Secord, and Albert Hakim. For purposes of the pending motion, the conspiracy may be summarized as having two objects: first, to defraud the United States through the illegal diversion of funds from arms sales to Iran to the supply of the Contras in Nicaragua (par. 13(a)); and second, to obstruct the Congress, to make false statements, and to falsify and destroy records (par. 13(b)). In its motion papers, the government has advised the Court that it wishes to narrow Count One by one of the following three methods: (1) by stipulation that it will restrict its proof at trial to the second set of objects of the alleged conspiracy; (2) by consent to an order eliminating from the indictment all the language referring to the first set of objects; or (3) by the return of a superseding indictment. The defendant objects to the government's proposals on various grounds.

■ First. Defendant argues that he is aware of no case in which the government was able to limit discovery rights and the presentation of evidence on an indictment simply by announcing its willingness to prove less than what is charged in that indictment, and he vigorously contests the government's "stipulation" proposal. The Court agrees: the proposal raises more problems than it solves.

The issue is not, as the government suggests, whether it can be trusted to abide by its proposed narrowing;[1] it is one of procedural regularity and the concomitant protection of the rights of the defendant. In these respects, the government's proposal is not viable, for when an indictment is broad but the proof to which the government intends to limit itself is much narrower, a great many unnecessary and difficult questions can, and probably will, arise in the course of the pretrial and trial proceedings, some of which cannot even be foreseen at this time. However, it is apparent

---

1. Government's Reply Memorandum at 9   note 6.

even now that these questions are likely to range all the way from the difficulty that will confront the defendant in not knowing from one phase of the case to the next what precisely it is that the government is committed to doing, to the problem of jury awareness of what the charges are on which it is to determine the guilt or innocence of the defendant. The defendant is entitled to be tried on an indictment that clearly recites the charges, not on a prosecutorial promise as to where it will go with its proof.

In a case which is likely to be procedurally complicated in any event—if only because of the issues of classified discovery and those which are likely to be presented under the Classified Information Procedures Act, 18 U.S.C. App. (CIPA)—it would be ill-advised to proceed on the basis of an indictment process that, as far as the Court is able to ascertain, has no precedent, and that would superimpose on the several inevitable disputes an extra layer of ambiguity and confusion. While the Court does not accept all of defendant's characterizations,[2] it does agree with his claim that this method of proceeding would impermissibly violate his rights, and it will not allow it.

Second. The government obviously has the authority to return to the grand jury to seek a superseding indictment narrower in scope than the present indictment. The Court has no involvement in that process, and unless and until such a superseding indictment is before it, there is nothing for it to decide.

Third. The government suggests, as a third alternative, that the indictment be amended by judicial action following the filing of an appropriate motion. One initial difficulty with that approach is that no such motion has been filed. The defendant has quite properly objected to the government's invitation that he file a motion to strike language from the indictment.[3] It is not his responsibility so to recast the indictment as to avoid the consequences the government fears.[4] However, the government has indicated, in the alternative, that, should the Court deem inappropriate the proposal to narrow the government's proof by stipulation, it is prepared to proceed by way of a motion of its own.[5] Rather than to halt the proceedings until the motion is actually filed, the Court will presently explore the issues presented by that course, on the assumption that the government will file the necessary motion.

Most fundamentally, the defendant argues that the reduction of the indictment proposed by the government would deprive him of his right under the Fifth Amendment to be tried on the charges brought by the grand jury. The grand jury, it is said, returned the present, broad indictment, and under the Fifth Amendment defendant is entitled to be tried on the basis of that indictment, and none other.

That argument, however, conflicts head-on with the decision of the Supreme Court in *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). In that case, a unanimous Court upheld the validity of a conviction upon proof that was narrower than the allegations in the indictment. In the view of the Supreme Court, this change in the proof did not deprive the

2. Contrary to defendant's claims, the government's proposal is not an invitation to the Court "to bargain with it over discovery, CIPA, and a date for trial," Defendant's Opposition at 2, 13–16; nothing in the government's papers conveys that impression. All issues will be decided not on the basis of "bargains" but strictly on their merits under the indictment actually before the Court.

3. Defendant's Opposition at 14–15 note 9.

4. These consequences are that the broadly worded indictment, charging defendant with illegal actions in the diversion of funds from Iran to the Contras, will generate lengthy and complex disputes regarding classified documents similar to those which arose in the case against Oliver North and will delay the trial of this defendant for a lengthy period of time. The government's concerns are reasonable ones, and they are shared by the Court.

5. Actually, the government's concession is somewhat ambiguous in that it refers explicitly only to the option of a superseding indictment. However, since the government is prepared to proceed by that method, it may be assumed that it would also proceed by way of a motion to narrow the current indictment.

defendant of his right to be tried on an indictment returned by a grand jury.

■ On the same principle, the reduction of the language of an indictment does not deny to a defendant his grand jury rights, provided that (1) the indictment as so narrowed continues to state a complete criminal offense, and (2) the offense is contained in the indictment as originally returned. See, *Salinger v. United States,* 272 U.S. 542, 548–49, 47 S.Ct. 173, 175, 71 L.Ed. 398 (1926); *United States v. Zauber,* 857 F.2d 137, 151 (3rd Cir.1988); *United States v. Diaz,* 690 F.2d 1352, 1356 (11th Cir.1982); *United States v. Milestone,* 626 F.2d 264, 268 (3rd Cir.1980); *United States v. Lyman,* 592 F.2d 496, 500 (9th Cir.1978); *Thomas v. United States,* 398 F.2d 531 (5th Cir.1967). Thus, the question here is whether Count One, as it is proposed to be narrowed by the government, would still state an offense, and whether that offense is contained in the indictment as it was returned by the grand jury.

On these issues, defendant contends that this case differs from *Miller,* in that there a failure of proof occurred only with respect to the means of a scheme to defraud, while here the government proposes to eliminate several of the objects of the alleged conspiracy, thus charging a different offense from that alleged by the grand jury.[6] But eliminating a means as opposed to an object is a distinction without a difference. *Miller* held that "the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment." 471 U.S. at 145, 105 S.Ct. at 1819. Thus, under *Miller* it is irrelevant in what way the reduced indictment differs from the former one; the question still is—as so reduced, does the conspiracy count of the indictment charge

an offense, and is it one that is not "new"?[7]

■ As indicated above, the grand jury alleged in this case a conspiracy with two objects: (1) defrauding the United States in the manner specified in paragraph 13(a) of Count One and (2) the commission of the obstruction, false statement, and destruction of records offenses specified in paragraph 13(b) of Count One. What would remain after paragraph 13(a) and its subsidiary language elsewhere in that count were stricken would be allegations which plainly charge a complete offense—a conspiracy with an object (*i.e.,* that set forth in paragraph 13(b)), means for effectuating that conspiracy, and overt acts committed pursuant thereto. Moreover, the offense thus charged would not enlarge on the grand jury's return but would be entirely encompassed within it. In short, the proposed change is a direct and snug fit with the *Miller* rationale.

For these reasons, the Court rejects defendant's objection to the proposed narrowing of the indictment, and if the government files a motion to that effect, the Court will strike from the indictment the language the government proposes to eliminate.

## II

### *Inclusion of Charges Against Oliver North*

■ Defendant Poindexter also objects to the retention in the government's proposed narrowed indictment of seven substantive counts against Oliver North who was initially a co-defendant of Poindexter's but whose trial was severed from his relatively early on. The objection is well taken.

Not only was North acquitted of five of these seven counts, but there is no warrant

---

6. Defendant's Opposition at 17.

7. Defendant also relies on the fact that in *Miller* the Supreme Court left standing part of *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887) which, it is said, renders invalid what the government proposes to do in this case. While the observation on the limits of the *Miller* decision is a valid one, the part of the *Bain* decision

that was not overruled is of no help to defendant here: it had to do with deletions from the indictment that effected an actual change in the charges. On the issue of a deletion which withdraws one of several viable charges, leaving a complete charge intact, *Ex parte Bain* was expressly overruled.

in federal criminal procedure for including in an indictment substantive charges against an individual who is not a defendant in the case to be tried. See Fed.R. Crim.P. 7(c)(1); *United States v. Fulcher*, 626 F.2d 985, 988 (D.C.Cir.1980). It is unclear what the inclusion of charges against North would accomplish, what proof would or could be adduced with respect thereto, and who would contest these charges. The counts against North would simply be an inert presence in the case, of no use to anyone and an obstacle and irritant to all.

More importantly, the inclusion of these counts would improperly prejudice both this defendant and North: the latter because he would have no means for defending himself against criminal charges in a case in which he is not a defendant, the former because the jury would likely be influenced adversely by a multiplicity of charges, whether or not they were relevant to his culpability or innocence. For these reasons, the Court will not permit this case to proceed to trial on an indictment which includes substantive counts in which only Oliver North, but not John Poindexter, is the defendant.[8] The Court suggests that the elimination of the North counts, as well as of specific references in Count One to substantive counts against North, be included in the government's motion to be filed herein.[9]

### III

### *Dismissal of Counts With or Without Prejudice*

■ The government has moved pursuant to Rule 48(a), F.R.Crim.P., to dismiss Counts Two and Three of the indictment which charge theft of government property and wire fraud, respectively. The only dispute between the parties on this aspect of the government's motion is whether the dismissal should be with or without prejudice. If the dismissal is without prejudice, the charges can be brought again; if with prejudice, they cannot.

Historically, the prosecutor had unrestricted authority to enter a nolle prosequi at any time before the empaneling of the jury, see *United States v. Salinas*, 693 F.2d 348, 350 (5th Cir.1982); *United States v. Weber*, 721 F.2d 266, 268 (9th Cir.1983); *United States v. Ammidown*, 497 F.2d 615, 620 (D.C.Cir.1973), and such a dismissal was unencumbered by any restriction on a renewal of the charges.

However, Rule 48(a), Fed.R.Crim.P., now requires leave of court for such a dismissal. While a court is still not free to substitute its judgment for that of the prosecutor, whose decision is deemed valid, the Rule has the effect of granting authority to the court in exceptional cases to reject a dismissal without prejudice—which would allow re-prosecution—if this would result in harassment of the defendant or would otherwise be contrary to the manifest public interest.[10] The Court would then instead order a dismissal with prejudice. Accordingly, although there remains a strong presumption in favor of a no-prejudice dismissal,[11] the ultimate decision in that regard depends upon the purpose sought to be achieved by the government and its effect on the accused.

---

**8.** Under well established law, there is of course no obstacle to the naming of North in the conspiracy count.

**9.** Defendant also complains of several other, relatively minor changes proposed to be made by the government in the indictment, particularly in paragraphs 35 and 55 of Count One. At oral argument, government counsel stated in response to defendant's objections that the prosecution would eliminate paragraph 35 altogether. As for the proposed elimination by the government in paragraph 55 of the references to the term "illegal" and the phrase "and to perpetuate the scheme," they would merely conform the paragraph to the elimination of the object stated in paragraph 13(a) of Count One, and would not constitute an impermissible alteration.

**10.** The rule is intended to allow courts to consider the "public interest, fair administration of criminal justice and preservation of judicial integrity." *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir.1988).

**11.** See generally, *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977); *United States v. Manbeck*, 744 F.2d 360, 372 (4th Cir.1984); *United States v. Perate*, 719 F.2d 706, 710 (4th Cir.1983).

The government's reasons for keeping open the possibility of a further prosecution of this defendant at some later time, following a dismissal of Counts Two and Three, are somewhat murky. In its memorandum in support of the motion to dismiss these counts, the government states no more than that "independent Counsel's ongoing work should not be hampered by a dismissal with prejudice."[12] In its reply memorandum, the government is somewhat more explicit, stating that, in moving for a dismissal without prejudice, it is seeking to keep open the option of trying these counts at a time "when the broad investigation of Iran/Contra is still incomplete, and when there is at least the possibility that further developments will minimize the classified information problems."[13] And during oral argument, the Independent Counsel stated that his investigation is not yet complete, witnesses who are now protected by the privilege against self-incrimination may become available to testify, and while he could not "foresee a renewal of those two counts" he did want "to protect against a rigid barrier."[14] The question is whether these reasons constitute a sufficient basis for avoiding a dismissal with prejudice.

It should be noted first of all that the subjective good faith of Independent Counsel, which is repeatedly emphasized in the government's papers, is not at issue. Neither the defendant, nor certainly the Court, questions that good faith in the slightest. Rather, the question is the effect on the defendant[15] of a dismissal of charges followed by their reinstitution at a later date. To put it more concretely, does it objectively amount to harassment, is it contrary to the public interest, to allow the prosecutor to dismiss charges but nevertheless keep them in abeyance for an indefinite period of time[16] in the hope or expectation that something will turn up to remove the complications arising from the presence in the case of substantial amounts of classified materials?

There does not appear to be a great deal of precedent elucidating what would and what would not call for a refusal to permit a prosecution to proceed at subsequent time, in circumstances such as these.[17] However, what precedent does exist, points to a dismissal with prejudice.

In *Salinas, supra,* where the prosecutor was displeased with the jury being empaneled, aborted the prosecution, and instituted a new one, the Court of Appeals overturned a conviction secured in the second proceeding. The court held, in language pertinent here, that the government could not validly use Rule 48(a) to gain a position of advantage, or to escape from a position of less advantage in which it found itself as a result of its own election. 693 F.2d at 353. Similarly, in *Ammidown, supra,* the Court of Appeals for this Circuit, speaking through Judge Leventhal, observed that the primary concern of courts which have rejected dismissals without prejudice was that of protecting a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and *"commencing another prosecution at a different time or place deemed more favorable to the prosecution"* (emphasis added). 497 F.2d at 620. See also, *United States v. Derr,* 726 F.2d 617 (10th Cir.1984); *United States v. Fields,* 475 F.Supp. 903, 908 (D.D.C.1979).

---

**12.** Government Memorandum at 9.

**13.** Government's Reply at 16 n. 10.

**14.** Transcript of proceedings of July 20, 1989, at 3. It may be assumed that the Independent Counsel is moving to dismiss also because he may be conscious of the possibility that, after a long period of wrangling, decisions by the Attorney General may, in the end, seek to abort the prosecution pursuant to section 6(e) of CIPA. The narrowing of the case would presumably obviate any legitimate objection by the Attorney General.

**15.** The primary purpose of the rule is the protection of a defendant's rights. *Salinas,* 693 F.2d at 351.

**16.** That is, until the statute of limitations has run.

**17.** In the *North* case, a dismissal without prejudice was subsequently changed to one with prejudice at the government's request, and in the case of Richard Secord, three counts were likewise dismissed with prejudice, albeit for reasons related to that defendant's lack of the requisite security clearance.

The Court can well appreciate the prosecutor's desire to preserve the best possible case against the defendant for use at a time when, possibly, the tactical situation is more advantageous.[18] Yet that kind of strategy is precisely what such cases as *Salinas* and *Ammidown* condemn. In the end, when a choice must be made, it is the Court's duty to protect defendant from the consequence of "another prosecution at a different time ... deemed more favorable to the prosecution" even if this could have the effect of conceivably hampering the government's plans down the road.[19]

The considerations in favor of a dismissal with prejudice are enhanced by the singular circumstance that the government is in this case not merely seeking to dismiss with a view later to re-file an entire indictment, but is attempting to pick and choose among several charges in a single indictment, proceeding to trial on some, and asking to delay until some future, indefinite date, the resolution of others. The government has not cited, and the Court has not found, any precedent endorsing such an approach. In any event, that kind of selectivity must be viewed with suspicion and disfavor, for it clearly lends itself to abuse and is particularly invasive of a defendant's legitimate expectations.

Poindexter was indicted on March 16, 1988. His trial on the current charges is not likely to be completed until the end of this year or the early part of next year—almost two years after he was first charged. If the government's motion were granted, the defendant's conviction or acquittal, whichever it might be, would not be the end of it. He would have to wait in a state of uncertainty and under public obloquy for an indefinite period of time until the government decided that, somehow, for some reason, the time had become more propitious for proceeding with a trial on the second half of the charges. In the view of this Court, such a process would not be fair to the defendant. The Court has an obligation to protect him from the uncertainty it entails, and from what, objectively, would be harassment, and it will do so. Counts Two and Three of the indictment are hereby ordered dismissed with prejudice.

## IV

### Timing of Future Proceedings

It is appropriate now to set a schedule leading toward the trial of this case. While absolute precision is not feasible, especially because of the classified document issues, and the fact that outside agencies potentially play a part in their resolution, certain principles and guideposts can be established.

First. The Court's rulings herein should have the effect, *inter alia*, of permitting the pre-trial proceedings to be shortened and allowing the start of the trial to be correspondingly advanced. Although ultimate judgments in these regards can be made only on the basis of actual discovery motions, CIPA notices, and the decisions thereon, the elimination from the case well in advance of trial of the most troublesome charges from a classified information point of view should substantially reduce the parties' need to ask for and to litigate regarding sensitive national security documents and information.[20] Certainly, the Court ex-

**18.** However, even if the government's expectations are fulfilled by the acquisition of further evidence (*e.g.*, through someone's cooperation who might seek to implicate this defendant), Poindexter's need for classified documents for his defense would not be minimized thereby, and the problem that is causing the government's current desire to dismiss Counts Two and Three would thus still be present.

**19.** It should be noted, however, that the dismissal with prejudice of Counts Two and Three does not immunize the defendant from being prosecuted, in a new indictment, for having committed offenses other than those being dis-

missed, as long as the new charges can pass the equivalent of a double jeopardy test. See *United States v. George*, 877 F.2d 63 (6th Cir.1989); *United States v. Welborn*, 849 F.2d 980, 983 n. 1 (5th Cir.1988). What the government will not be able to do in the future is to prosecute this defendant on the charges now being dismissed. *But cf., United States v. Vaughan*, 715 F.2d 1373, 1377-78 (9th Cir.1983).

**20.** In the *North* case, some nine months were consumed with litigation concerning classified discovery and CIPA.

pects both parties to frame their discovery and CIPA requests in that spirit. The Court would look askance at wide-ranging document demands made solely for the purpose of postponing the trial or subverting judicial procedures, as appears to have been done by a co-defendant of this accused. See *United States v. North,* 708 F.Supp. 389, 393 (D.D.C.1988).

Second. In response to the Court's request, the parties have advised it of the motions other than discovery motions [21] they intend to file, and they have proposed schedules for the briefing of such motions.

The government states that it expects to file a motion for reciprocal discovery pursuant to Fed.R.Crim.P. 16(b) at the completion of its discovery to defendant, and defendant has listed sixteen motions of various kinds that he intends to file.

The parties differ to some extent on an appropriate briefing schedule for these motions. The government suggests that all motions (other than the CIPA notices) be filed by August 7, 1989, the briefing and decision process to conclude by the end of September. Defendant advocates the adoption of a more leisurely schedule: that his motions be filed in two phases, the first phase to begin August 15, 1989, the second to start early in October, and to end [22] late in November.[23] The Court regards the government's proposed schedule as more realistic and more appropriate to the needs of this action.

It is only to acknowledge the obvious to note that this is an important case for the defendant, the prosecution, and the public. Unfortunately the case had to be severed from those against Poindexter's three co-defendants, and a substantial delay occurred herein while the pre-trial proceedings and the trial of Oliver North were in progress. As a consequence of these events, unavoidable as they were, this matter has been pending for an unusually long period of time.

Now that the case is ready to be considered on its own, the Court has a responsibility to move it forward expeditiously, consistently with the dictates of fairness. On this basis, there is no warrant for the relatively slow-moving schedule proposed by defendant or for his suggested two-phase approach. The defendant proposes that he be permitted to delay the filing of a number of his motions until after his anticipated dozen or so motions to dismiss the indictment or counts thereof have been decided, the principal reason being that, depending upon the Court's rulings, the remaining motions may become unnecessary. The reason does not sustain the proposal.

A dismissal of the indictment or of particular counts would obviously have an effect on the remaining motions: it would either alter their substance or render them entirely unnecessary. However, this kind of slow-motion, phased approach could be advocated on the same basis in opposition to any real cut-off date for the filing of motions in almost any case. Moreover, many of the motions are presumably similar to those that were filed or considered for filing in the *North* case before or after the severance, and their preparation and the preparation of opposing papers by the government should therefore not place an undue burden on either party.

In any event, the Court is of the view that in a case which has been pending as long as this one a more expeditious schedule is called for, in part so as not to preclude the possibility of a trial this year. Accordingly, motions shall be filed on the following schedule:

August 25—Defendant shall file all remaining motions other than the matters due on September 18;

September 8—Government's response to defendant's motions, and its notice of

---

**21.** The Court previously set the following deadlines for the discovery motions: July 31—Defendant's motion to compel discovery; August 14—Government's response; August 24—Defendant's reply.

**22.** The concluding dates are estimated based on the filing of responsive and reply papers, and the time it would take for decisions on the motions.

**23.** Even at that, this schedule does not take account of CIPA notices, or motions to suppress.

the classified documents it intends to use in its case-in-chief;

September 18—Defendant's reply to government's response; motions for trial subpoenas duces tecum; and defendant's section 5 CIPA notice.[24]

---

**24.** To the extent that extended discovery disputes result in additional discovery production shortly before or after September 18, any CIPA issues raised by these additional documents may be covered by prompt supplemental section 5 CIPA notices. Likewise, motions to suppress evidence may be filed fifteen days after the evidence is produced.